**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Elizabeth CHALKIAS (91–3528); Hendrick Gil (91–3783); and Mercedes Rodriguez (91–3773), Defendants–Appellants.**

Nos. 91–3528, 91–3773, 91–3783.

United States Court of Appeals,
Sixth Circuit.

Submitted and Argued April 7, 1992.

Decided July 30, 1992.

Certiorari Denied in No. 91–3773,
Oct. 13, 1992. See 113 S.Ct. 351.

Bradley D. Barbin (briefed and argued), Office of the U.S. Atty., Columbus, Ohio, for U.S.

Steven S. Nolder (briefed and argued), Columbus, Ohio, for Mercedes Rodriguez.

Dennis C. Belli (argued and briefed), Columbus, Ohio, for Hendrick Antonio Gil.

Michael T. Gunner (briefed), Gunner & Banchefsky, Hilliard, Ohio, for Elizabeth S. Chalkias.

Before: MARTIN and RYAN, Circuit Judges; and WILHOIT, District Judge.*

PER CURIAM.

Defendant Hendrick Gil appeals his jury convictions and sentences for conspiracy to possess with intent to distribute over five kilograms of cocaine, engaging in a continuing criminal enterprise, possession with intent to distribute cocaine, and traveling in interstate commerce to carry on a business enterprise involving cocaine. Defendant Mercedes Rodriguez appeals the sentences imposed upon her jury convictions for conspiracy to possess with intent to distribute over five kilograms of cocaine, distribution of over 500 grams of cocaine, and maintaining a residence for the unlawful storage and distribution of cocaine. Defendant Elizabeth Chalkias appeals the sentence imposed pursuant to her plea of guilty for maintaining a residence for the unlawful storage and distribution of cocaine. For the reasons that follow, we affirm the convictions and sentences.

I. Facts:

In 1990, the Columbus, Ohio Police Department Narcotics Bureau and the Franklin County, Ohio Sheriff's Department Special Investigations Bureau began investigating a suspected cocaine pipeline between New York City and Columbus. The investigation was soon joined by the Drug Enforcement Administration and the United States Attorney's Office. As the investigation progressed, the evidence suggested that a New Yorker named Hendrick Gil was the ringleader. A sealed federal criminal complaint was prepared against Gil alleging conspiracy to distribute cocaine and on November 7, 1990, Gil was arrested pursuant to the complaint. On the same day, Elizabeth Chalkias was interviewed at a hotel room that investigators had determined was being utilized by Gil. Traces of

cocaine and $1,800.00 in cash were found in the hotel room. Subsequently, Chalkias began cooperating with investigators. It was the theory of the United States at trial that Chalkias was a woman who had been "corrupted" by Gil into assisting with his drug activities.

Based in part on information provided by Chalkias, a Federal Grand Jury returned a fifteen-count indictment against seventeen defendants, including Gil, Chalkias and Mercedes Rodriguez, Gil's cousin and a suspected drug courier. Gil was named in seven counts of the indictment, Rodriguez in three and Chalkias in four. In exchange for an agreement by the United States not to prosecute her further, Chalkias pled guilty to one count of maintaining a residence for the unlawful storage and distribution of cocaine. Gil and Rodriguez pled not guilty to all counts and went to trial.

On April 29, 1991, after an eleven day trial, the jury found Gil guilty of four of the seven counts in which he was named. During the course of the trial, one count of possession with the intent to distribute cocaine, and one count of distribution of cocaine were dismissed against Gil and the jury found Gil not guilty on another count of possession with intent to distribute. Rodriguez was found guilty on all counts of which she was charged.

Gil was sentenced to two 300 month terms of imprisonment upon the conspiracy and continuing criminal enterprise counts, a 240 month term upon the count of possession with intent to distribute, and a sixty month term upon the count of traveling in interstate commerce, to be served concurrently. Rodriguez was sentenced to 121 months imprisonment on each of the counts of her conviction, to be served concurrently. Chalkias was sentenced to twelve months imprisonment.

II. Alleged Trial Errors:

A.

Gil alleges that the indictment against him should have been dismissed by the

---

* The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

District Court for failure to comply with the provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. Section 3161(c)(1) of this Act requires that a defendant be tried within seventy days from the later of the filing date of the information or indictment, or the date the defendant first appears before a judicial officer of the court in which the charges are pending. The seventy day deadline for trial is not absolute. Under § 3161(h)(1)–(9), certain delays are "excluded in computing the time within which ... the trial of any such offense must commence." "Excludable delays" include a delay resulting from pretrial motions, § 3161(h)(1)(F), delay of up to thirty days during which time any proceeding concerning the defendant is under advisement by the court, § 3161(h)(1)(J), delay resulting from the joinder for trial with a co-defendant whose time for trial has not run, § 3161(h)(7), and delay resulting from a continuance granted by any judge on the basis that the ends of justice served by the continuance outweigh the need for a speedy trial, § 3161(h)(8)(A).

On December 14, 1990, Gil was arraigned, yet his trial did not commence until April 15, 1991, 122 days later. Based on this delay, Gil alleged a violation of the Speedy Trial Act and filed a *motion to dismiss the indictment.* The District Court found that all the days between December 15, 1990 and April 15, 1992 were excludable, and the motion was denied. Gil appeals the denial of his motion to dismiss.

It is undisputed that the first day of the seventy day Speedy Trial period was December 15, 1991. *United States v. Blackmon,* 874 F.2d 378, 380 (6th Cir.1989), *cert. denied,* 493 U.S. 859, 110 S.Ct. 168, 107 L.Ed.2d 125 (1989); *United States v. Mentz,* 840 F.2d 315, 326 (6th Cir.1988). The District Court recognized that on November 21, 1990, Gil filed a motion for discovery, on January 2, 1991 he filed a motion to compel discovery, and on January 18, 1991, he filed a motion for severance. The United States responded to these motions on January 30, 1991, at

which time the matters stood fully submitted and were taken under advisement by the District Court.[1] Pursuant to § 3161(h)(1)(F) of the Speedy Trial Act, the District Court excluded all the days between November 21, 1990 and January 30, 1991 as delay resulting from pretrial motions.

▪ Gil argues that a motion for discovery is not a pre-trial motion within the meaning of the Speedy Trial Act because Rule 16 of the Federal Rules of Criminal Procedure contemplates extra-judicial discovery. The only time an actual motion is required, says Gil, is if the government fails to comply with a defendant's discovery request. The implied conclusion of Gil's argument is that his discovery "motions" were not formal motions, but rather were discovery requests directed to the United States, and thus, those motions did not create excludable delay.

This is not a new argument before the Court. In *Mentz,* the defendant made a motion for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The United States filed no objection to the motion and the District Court did not rule on the motion until the first day of the trial. We found that the District Court had treated the motion merely as a *pro forma* request for discovery directed at the government, and we concluded that the motion did not "toll the speedy trial clock" under § 3161(h)(1)(F). *Mentz,* 840 F.2d at 329.

The circumstances in *Mentz* do not exist in the present case. Gil's two motions for discovery elicited a response from the United States and, on March 1, 1991, a ruling from the District Court. It is clear that neither the United States nor the District Court treated Gil's motions as requests directed toward the government, but rather as full-fledged motions that required disposition well in advance of the trial date.

▪ In such situations, § 3161(h)(1)(F) allows the exclusion of "all time that is consumed in placing the trial court in a

---

1. An order was issued on January 3, 1991 altering the discovery schedule, but this order did

not, as Gil has suggested, dispose of the pending motions.

position to dispose of a motion." *Henderson v. United States,* 476 U.S. 321, 331, 106 S.Ct. 1871, 1877, 90 L.Ed.2d 299 (1986). Section 3161(h)(1)(F) is not predicated on the propriety of a motion under the criminal discovery rules. Whether Gil's motions were, in fact proper, is now irrelevant. It would be improper manipulation of the Speedy Trial Act to allow Gil to file two "motions" which elicited a response and a ruling, and then claim on appeal that for purposes of the Act, these "motions" should not have been treated as such.

■ In the alternative, Gil argues that the delay allegedly caused by the government in providing discovery, which in turn caused him to file the motions for discovery, should not inure to the government's benefit by creating an excludable delay. However, it was necessary for the District Court to exclude days from the Speedy Trial period only to facilitate the continuance of the originally scheduled trial date. The trial date was continued, not at the request of the government, but at the request of Gil's co-defendants. Any exclusion which allowed the trial to be continued inured to the benefit of those requesting the continuance, and not to the benefit of the United States. We reject Gil's arguments and conclude that the days from December 15, 1990 through January 30, 1991 were properly excluded.

The District Court went on to exclude the days from January 30, 1991 through March 1, 1991 pursuant to § 3161(h)(1)(J), as delay during which Gil's motions were taken under advisement. The Supreme Court has held that Congress intended to "exclude automatically" the thirty days after a motion is taken under advisement by a District Court. *Henderson,* 476 U.S. at 331, 106 S.Ct. at 1877. We therefore find that this period was properly excluded.

The last co-defendant to be arrested in this case, Garret Boyer, was arraigned on January 4, 1991. Shortly after his arraignment, Boyer and three other co-defendants moved for a continuance of the trial date, which was at that time scheduled for February 4, 1991. The motion was in part based on co-defendants' need for additional time to prepare for trial. In accord with the "ends of justice" exception of § 3161(h)(8), the District Court concluded that the need for a continuance outweighed the interests of a speedy trial. Thus, the continuance was granted and all the days from February 4, 1991 through April 15, 1991 were excluded from the Speedy Trial calculation.

■ When a District Court excludes the period that a trial is continued pursuant to the "ends of justice" exclusion, we examine whether the District Court set forth, on the record, proper justification for the continuance. *United States v. Crane,* 776 F.2d 600, 604 (6th Cir.1985); *United States v. Richmond,* 735 F.2d 208, 214–215 (6th Cir. 1984). Under § 3161(h)(8)(B), the Act specifies certain factors that a District Court may, and may not consider in making the determination of whether to grant an ends of justice continuance.

■ Upon granting the continuance requested by Gil's co-defendants, the District Court recognized the complexity of the case, the fact that numerous defendants and counts were involved, the prior delay in pre-trial discovery, and the fact that counsel for one of the defendants had been retained only one week before the originally scheduled trial date. These findings were made a part of the record in the District Court's order granting the continuance. We hold that these findings were proper considerations under § 3161(h)(8)(B)(ii), and conclude that the findings warrant an "ends of justice" exclusion for the days between February 4, 1991 and April 15, 1991.

The days from December 15, 1990 through January 30, 1991, from January 30, 1991 through March 1, 1991, and from February 4, 1991 through April 15, 1991 were correctly excluded from the Speedy Trial Act limitation period. Thus, none of the seventy days, within which Gil was to be tried, had expired, and the District Court properly denied Gil's motion for a

**1212**

dismissal of the indictment.[2]

**B.**

At trial, Gil took the stand in his own defense and now argues that the government's cross-examination of him was improper and served to inflame the jury such that he was denied a fair trial. Thirteen areas of questioning were identified by Gil as improper.

■ Several of the questions complained of by Gil drew no objection from defense counsel at trial. Under the contemporaneous objection rule, failure to lodge an objection during the trial constitutes a waiver of any objection on appeal, absent plain error. *United States v. Meyers*, 952 F.2d 914, 917 (6th Cir.1992), *cert. denied*, —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (U.S.1992); Fed.R.Crim.P. 52(b). Plain error is an error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). The plain error exception to the contemporaneous objection rule is to be used sparingly and only to prevent a miscarriage of justice. *Young*, 470 U.S. at 15, 105 S.Ct. at 1046 (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

■ During oral argument, and in his brief, Gil concentrated his attention on the government's cross-examination that related to his knowledge of the mandatory sentences under the federal sentencing guidelines:

Q: And when you were involved from July 2nd on, how many kilos do you think were involved in this conspiracy?
A: In the time I took the business?
Q: Yes.
A: Probably less than 5 or a little more.

Q: Do you understand that if you say less than 5, you will not be subject to a penalty 10 to life in prison? Do you understand that?
A: A hundred percent, I understand this.

\* \* \* \* \* \*

Q: Did [defense attorney] explain that to you?
A: Yes, continuing criminal enterprise, but excuse me, sir, I didn't understand the CCE. I didn't understand that.
Q: Continuing criminal enterprise?
A: Yes, I know.
Q: Your lawyer explained that to you?
A: Yes, sir.
Q: Before you got on the stand?
A: Yes, sir.

(Transcript at 1997–1999). Gil argues that this cross-examination improperly delved into the area of privileged attorney-client relations.

We find that in asking these questions, the government approached the line between permissible impeachment and impermissible questioning concerning the attorney-client relationship. However, defense counsel did not object to these questions and we cannot say, when viewed in the context of the proceedings as a whole, that these questions rose to the level of plain error such that the eleven day trial was rendered unfair.

■ Gil also argues that numerous questions asked of him on cross-examination were leading questions that suggested facts not in the record. Twelve examples of leading questions were presented in Gil's appellate brief. These allegedly improper questions must again be placed in the context of the trial as a whole. We reiterate that this was an eleven day trial. Gil's testimony alone consumed over 300 pages of the transcript. As Gil himself admits, the jury was introduced to a "laundry list" of individuals, most of whom participated

2. Gil has also argued that days were improperly excluded under § 3161(h)(7). Since we find that all of the days between Gil's arraignment and trial were properly excluded under other sections of the Speedy Trial Act, it is unnecessary to rule upon the propriety of any duplicative exclusion under § 3161(h)(7).

in the drug business at least in the posture of buyer or seller. Most of the questions about which Gil complains suggest incidents of drug activity among these individuals, and are cumulative of admissible evidence elsewhere in the record.

Questions posed to a criminal defendant on cross-examination are prejudicial only if "the challenged questioning contributed to the jury's determination of guilt." *United States v. Garcia*, 866 F.2d 147, 153 (6th Cir.1989) (citing *Chapman v. California*, 386 U.S. 18, 25–26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967)). Based on the amount of admissible testimony presented to the jury that was inculpatory of Gil, we conclude that any errors contained in the twelve examples of leading questions presented by Gil were harmless. None of these questions rose to the level of plain error.

### C.

Next, Gil argues that comments made by the government during the closing argument were prejudicial. This argument is based solely on the following statement during the government's closing:

"We can't stop all the drugs that come in here and are distributed throughout Columbus, Ohio. We would like to do that. We can't. We can't prevent so many lives destroyed by the distribution of these drugs on our streets and to the people here, but we, at least through the criminal justice process and through sworn juries such as yourselves, have the opportunity to hold those who do participate in these endeavors accountable."

(Transcript at 2286–2287). This portion of the closing argument, says Gil, improperly urged the jurors to convict him in order to protect community values.[3] It is not sufficient that these remarks may have been improper or prejudicial. Since no objection was made by defense counsel, these remarks are actionable on appeal only if they constitute plain error. *Meyers*, 952 F.2d at 917.

It is axiomatic that a prosecutor may not make remarks that are calculated only to arouse the passions and prejudice of the jury. *Viereck v. United States*, 318 U.S. 236, 247, 63 S.Ct. 561, 566, 87 L.Ed. 734 (1943). However, isolated inappropriate remarks by the prosecutor, in an otherwise fair trial, do not generally justify reversal of a criminal conviction. *United States v. Castro*, 908 F.2d 85, 89 (6th Cir. 1990) (citing *Young*, 470 U.S. at 11–12, 105 S.Ct. at 1044). Gil cites only this single passage in alleging that the entire eleven day trial was rendered unfair by improper prosecutorial remarks. We find that the isolated remarks made by the prosecutor in closing do not rise to the level of plain error and did not render the trial unfair.[4]

### D.

Gil next argues that there was insufficient evidence to support his conviction on the charge of carrying on a continuing criminal enterprise (CCE). It is correctly noted by Gil that in order to be guilty of CCE, a defendant must be shown to have acted in concert with at least five other individuals to whom the defendant occupied "a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c)(2)(A).[5] Proving that an individual was in a buyer-seller relationship with the alleged manager is not sufficient to show that the individual was being managed. *United States v. English*, 925 F.2d 154, 157 (6th Cir.1991), *cert. denied*, ─── U.S. ───, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991) (citing *United*

---

3. It has been the holding in other Circuits that an argument is improper if it is designed to urge a jury to return a guilty verdict in order to do something about the "drug problem." *United States v. Barlin*, 686 F.2d 81, 93 (2d Cir.1982); *United States v. Hawkins*, 595 F.2d 751, 754–755 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979).

4. We reach this conclusion despite the fact that the government did not see fit to respond to this argument.

5. There are five elements in a CCE offense. *United States v. Davis*, 809 F.2d 1194, 1203 (6th Cir.1987), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987). Gil has not challenged the adequacy of the evidence presented to establish the other four elements.

*States v. Jenkins,* 904 F.2d 549, 553 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990)). Gil asserts that the "laundry list" of persons presented to the jury consisted mostly of individuals who were in a buyer-seller relationship with him and there were not five individuals, among those presented, over whom he asserted the requisite management or control. For this reason, Gil concludes that there was not sufficient evidence to prove him guilty of CCE and his conviction should be reversed.

 While a mere buyer-seller relationship does not establish a managerial relationship, this and other Circuits have recognized several activities that, if engaged in by a defendant, would constitute the requisite management of another, including: setting prices for drugs, dictating terms of drug sales, approving customers, storage of drugs in the house of another, and having another transport drugs. *English,* 925 F.2d at 157 (citing *Jenkins,* 904 F.2d at 554); *United States v. Jones,* 801 F.2d 304, 308–310 (8th Cir.1986). In determining whether individuals involved in this case were managed by Gil, we must view all evidence in the light most favorable to the government and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martin,* 897 F.2d 1368, 1373 (6th Cir.1990) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

The evidence established that Gil used the residences of Elizabeth Chalkias (Transcript at 452–456, 467) and Mercedes Rodriguez (Transcript of Sentencing of Gil at 13–14)[6] to store cocaine, and that Gil used Abel "Fatso" Collado (Transcript at 150, 1481), Thomas Fay (Transcript at 967–969), and Richard Gil (Transcript at 1460) as drug couriers.[7] Viewing the evidence in the light most favorable to the government, we find the evidence sufficient to allow a rational trier of fact to conclude that Gil supervised, organized, or managed these five individuals.[8]

### E.

A closely related allegation of error is Gil's argument that the District Court should have specifically instructed the jury as to which persons could not have been considered as individuals managed by Gil. To support this argument, Gil invites the Court to adopt a ruling of the Ninth Circuit, which holds that:

"where the jury had a confusing array of persons presented, some of whom could be counted [as persons managed by a CCE defendant] and some of whom could not be counted, it was plain error to fail to instruct the jury as to who could not count towards [the defendant's] conviction of a continuing criminal enterprise."

*United States v. Jerome,* 924 F.2d 170, 173 (9th Cir.1991). Gil concludes that since the jury in this case was presented with numerous persons who, according to Gil, were not managed by him, it was plain error not to issue the instruction required by the Ninth Circuit.[9]

In *Jerome* during closing argument, the jury was presented with numerous persons that the government *told them could count* in making up the five persons whom the defendant managed. *Id.* at 173. In the

---

**6.** In her objection letter to the pre-sentence report, Rodriguez admitted to maintaining a place for the distribution of cocaine.

**7.** Gil's relationship as to these five individuals need not have existed at the same moment. The CCE requirement is met if Gil had separate relationships with each of the five persons. *English,* 925 F.2d at 157. Also, a jury is not required to determine unanimously the individuals that were managed. *Id.* at 158 (citing *United States v. Linn,* 889 F.2d 1369, 1374 (5th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990)).

**8.** Numerous other individuals were involved in this drug distribution enterprise. However, it is unnecessary for us to decide whether or not these other persons were managed by Gil since clear evidence shows that at least five were managed by him.

**9.** Gil must show that the failure to issue such an instruction was plain error since defense counsel did not object to the instructions at trial. *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.1986), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986).

present case, during closing argument, the jury was told no such thing. The government instead simply summarized the evidence and the activities of each individual, never stating that any certain individual was managed by Gil. In fact, the government specifically left the question open by stating, "as you evaluate each of these individuals in terms of this ongoing distribution network and conspiracy, the questions that arise are their participation, each individual's participation, what was it, did they know what was going on? Did they participate in this illegal business?" (Transcript at 2270).

■ The holding in *Jerome* does not apply under the present circumstances since, in the present case, the jury was not given an erroneous list of persons managed by Gil. We also decline to adopt the view that failure to give an instruction setting out the persons that could not be considered to have been managed by a CCE defendant is *per se* plain error. Instead, we examine the instruction in the context of the case as a whole.

■ In the present case, the District Court instructed the jury that "[t]he terms 'organizer', 'supervisor' and 'manager' mean a person who occupies some position of management or supervision entailing the exercise of some power or authority over others." While the instruction did not do much more than restate the statute, and could have offered greater guidance to the jury, nothing contained therein is contrary to the law of this Circuit.[10] We do not find that the instruction was so deficient as to constitute plain error.

### III. Alleged Sentencing Errors:

#### A.

For purposes of sentencing, the District Court determined that the drug quantity involved in this case was forty to fifty kilograms of cocaine. In his own testimony, Gil estimated that his total involvement was five kilograms or less. He argues that witnesses who stated he was more heavily involved were not reliable and concludes that their testimony should not have been considered at sentencing since the District Court should consider only information that "has sufficient indicia of reliability to support its probable accuracy." United States Sentencing Commission, *Guidelines Manual*, § 6A1.3(a) (Nov.1991).

■ Quantities of drugs involved in the course of a defendant's conduct, may be included in determining the base offense level as long as that quantity is supported by facts that have "some minimum indicium of reliability beyond mere allegation." *United States v. Smith,* 887 F.2d 104, 108 (6th Cir.1989) (quoting *United States v. Baylin,* 696 F.2d 1030, 1040 (3d Cir. 1982)).[11] Specifically, the proof presented at a sentencing hearing must satisfy a preponderance of the evidence standard. *United States v. Robison,* 904 F.2d 365, 371 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990).

■ All parties agree that the drug quantity used by the District Court was supported by admissible evidence. Gil challenges the District Court's finding that this evidence was sufficiently reliable. Such a determination depends solely on credibility assessments, and it is disturbed on appeal only upon a finding that the District Court's acceptance of the evidence was clearly erroneous. *Id.* at 372. The only evidence supporting Gil's version of the amount of cocaine that was involved comes from Gil's own testimony. We find that it was not clear error for the District

---

10. This Circuit has not adopted a pattern instruction for the offense of conducting a continuing criminal enterprise. For an instruction that more specifically describes the management of persons in a continuing criminal enterprise see 2 Devitt, Blackmar and O'Malley, *Federal Jury Practice and Instructions,* § 55.07 (1990).

11. It must also be found by the sentencing court that the quantity of drugs used to determine the base offense level be "part of the same course of conduct or common scheme or plan as the offense of conviction." *Smith,* 887 F.2d at 107. Gil only challenges the reliability of the evidence supporting the quantity of forty to fifty kilograms. He does not question the connection of this amount with the course of conduct of his conviction.

Court to disregard the testimony of Gil in favor of the numerous other witnesses who testified that much larger amounts of cocaine were involved.

### B.

▇▇ Both Gil and Rodriguez argue that they should have received a two point offense level reduction for their clear recognition and affirmative acceptance of personal responsibility. U.S.S.G. § 3E1.1(a). They base this conclusion on admissions of guilt made to the probation officer and to the District Court after their convictions.

We have held in cases involving this oft-appealed issue that:

> "[w]hether or not a defendant has accepted responsibility *for his crime is a factual question....* Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area.... For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

*United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (citations omitted)). The burden is on the defendant to demonstrate acceptance of responsibility. *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).

The District Court found that before, during, and after the trial, both Gil and Rodriguez attempted to minimize their roles in the drug conspiracy. Thus, the Court concluded that any reduction for acceptance of responsibility was not warranted. This conclusion was reached after the Court heard all the testimony at trial, the findings of the probation office, and the statements of the defendants themselves. We find that the record supports the Court's denial of the reduction and such denial was not clear error.

### C.

▇▇ The base offense level of Rodriguez was enhanced by two levels pursuant to a finding by the District Court that a firearm was connected with her offenses. U.S.S.G. § 2D1.1(b)(1). Rodriguez claims this finding was clearly erroneous because it was improbable that the weapon found in her house was connected with her drug offenses.

The evidence presented at trial disclosed that police found a Mac–10 semi-automatic firearm in the basement rafters of Rodriguez's apartment; the same apartment at which Rodriguez allowed the storage of Gil's cocaine. The gun was inside a box and no ammunition was found either in the gun or in the box. Rodriguez admits that because of its location, she was in constructive possession of the Mac–10.

Possession of a firearm during the commission of a drug offense creates a presumption that the possession is connected with the drug offense. *United States v. Moreno*, 899 F.2d 465, 470 (6th Cir.1990). This presumption is overcome only upon a showing that it is clearly improbable that the firearm was connected to the drug offense. *Id.* (quoting U.S.S.G. § 2D1.1, comment. (n. 3)).[12]

Although Rodriguez concedes constructive possession of the gun, she claims it was improbable that the gun was associated with her drug activities because the evidence established that she was not the owner of the gun, that she never handled the gun, and that there was no trace of drugs or drug paraphernalia found in the basement near the gun.[13] In support of this argument, Rodriguez cites *United*

---

12. Since Rodriguez does not challenge the factual findings of the District Court, but rather the application of those facts to the guidelines, our review is *de novo. United States v. Sanchez*, 928 F.2d 1450, 1458 (6th Cir.1991) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990)).

13. There were traces of drugs and drug paraphernalia found on the first and second floors of the apartment.

*States v. Garner*, 940 F.2d 172 (6th Cir. 1991), in which police discovered an unloaded, single-shot, antique Derringer locked in a safe in Garner's basement. Locked in another safe in the basement, police found three kilograms of cocaine. Garner pled guilty to possession of cocaine with intent to distribute, and at sentencing, the District Court enhanced his base offense level by two points for possession of a firearm during a drug offense. We vacated this sentence after finding the enhancement improper for three reasons: the gun was unloaded, it was stored in a place where one would likely store a gun possessed for a legal purpose, and it was not of a type normally associated with drug activity. *Id.*, at 176.

The only similarity between the present case and *Garner* is that both the Mac–10 and the Derringer were unloaded. The Mac–10 found in Rodriguez's apartment was found in the basement rafters, which is a place indicating purposeful concealment rather than a place indicating possession for a legal purpose. Also, a Mac–10 semi-automatic weapon is clearly a gun of the type that is normally associated with drug activity. The holding in *Garner* does not support Rodriguez's argument on appeal and, in fact, suggests that her two level enhancement was proper.

Further, Rodriguez's arguments that the gun was not hers and that she never handled it, even if true, do not affect the propriety of the District Court's decision to apply the two level enhancement. The possession of a gun by one co-conspirator is attributable to another co-conspirator if such possession constitutes reasonably foreseeable conduct. *United States v. Williams*, 894 F.2d 208, 211 (6th Cir.1990). The trial record is rife with evidence concerning firearm possession during drug activities. Rodriguez knew of the existence of the Mac–10 and claims that Gil was its owner. Even if Rodriguez was never in actual possession of the Mac–10, we find that she should have reasonably foreseen that Gil would possess the gun during, and in connection with the drug conspiracy of which she was a part. We conclude that the two point enhancement was proper.

### D.

The final argument advanced by Rodriguez is that her base offense level should have been reduced by two points because she was a minor participant in the drug conspiracy. U.S.S.G. § 3B1.2(b). At sentencing, the District Court found that Rodriguez was not eligible for this reduction because her role was one of an active, "ground floor" participant in the conspiracy, and not the role of a minor participant. (Transcript of Sentencing of Rodriguez at 12).

It is unnecessary for this Court to restate Rodriguez's version of her role in the drug conspiracy. It is sufficient that evidence presented at trial supported the conclusion that Rodriguez was not a minor participant, either as compared to others in this specific drug conspiracy, or as compared to the average drug offender.[14] We give due deference to a District Court's decision concerning whether a defendant played a minor role, and disturb that decision only if clearly erroneous. *United States v. Nagi*, 947 F.2d 211, 215 (6th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 2309, 119 L.Ed.2d 230 (U.S. March 9, 1992). It was not clear error to conclude from the evidence presented at trial that Rodriguez did not play a minor role in this drug conspiracy.

### E.

In a similar argument, Chalkias asserts that the District Court should have departed downward from the applicable guideline range because the drug offense to which she pled guilty was the result of coercion and duress. U.S.S.G. § 5K2.12. Chalkias argues that before she met Gil,

---

**14.** For example, at sentencing, the District Court noted that Rodriguez provided transportation to all the major figures in the conspiracy, was a direct associate of these major figures, was a drug courier, provided a storage place for cocaine and firearms, and was referred to by one witness as Gil's "right hand." (Transcript of Sentencing of Rodriguez at 12–13).

she was gullible and impressionable and was thus easily influenced by him. Allegedly, when she tried to break ties with her co-conspirators, one of them threatened to kill her. Chalkias concludes that these factors should have been taken into account by the District Court at sentencing and the failure to do so was an abuse of discretion.

A failure by the District Court to depart downward under § 5K2.12 is not cognizable on appeal if:

"(1) the District Court properly computed the guideline range, (2) the District Court was not unaware of its discretion to depart downward from the guideline range, and (3) the District Court did not impose the sentence in violation of law or as a result of the incorrect application of the Sentencing Guidelines."

*Meyers*, 952 F.2d at 920 (citing *United States v. Davis*, 919 F.2d 1181, 1187 (6th Cir.1990)). No attempt has been made by Chalkias to show that any of the above factors do not exist. Upon review of the record, we find that the District Court properly computed Chalkias' guideline range; was aware of its discretion to depart downward; declined to do so; and otherwise correctly applied the Sentencing Guidelines. (Transcript of Sentencing of Chalkias at 16–18). Thus, the decision by the District Court to refuse the downward departure requested by Chalkias is not cognizable on appeal.

### F.

At the sentencing of Chalkias, the District Court took into account the fact that she had introduced her brother-in-law, Nikias, to Gil in order that Nikias could purchase inexpensive cocaine from Gil. The District Court stated that it was "particularly disturbed" by this activity and Chalkias was subsequently sentenced at the top of the applicable guideline range. (Transcript of Sentencing of Chalkias at 16–19).

Chalkias states that because this information was not contained in the pre-sentence report, she was unprepared to provide a rebuttal. It is her contention that she should have been given an opportunity to contest all factors used by the District Court in its sentencing determination. In support of this argument, Chalkias cites several cases which hold that when a District Court *departs upward* from the applicable guideline range, a defendant should be given reasonable notice and an opportunity to rebut the factors used for the upward departure. *Burns v. United States,* — U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991); *United States v. Urrego-Linares,* 879 F.2d 1234, 1239 (4th Cir.1989), *cert. denied,* 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Otero,* 868 F.2d 1412, 1415 (5th Cir.1989).

■ The authority cited by Chalkias does not apply to the present situation, where the District Court sentenced *within* the applicable guideline range. The information concerning Nikias was not the basis of an upward departure. Further, Chalkias had notice of this information because it came from testimony given by Nikias at trial.

Where a sentence was within the applicable guideline range, it is appealable only upon the grounds that it was imposed in violation of the law, or that it was imposed as a result of an incorrect application of the sentencing guidelines. 18 U.S.C. § 3742(a)(1), (2). We find that neither of these circumstances exist and thus we will not review the District Court's decision to sentence within the applicable guideline range.

### IV. Conclusion:

For the foregoing reasons, the defendants' convictions and sentences are AFFIRMED in all respects.