UNITED STATES of America, Plaintiff,

v.

Kenneth CHRISTUNAS, Defendant.

No. 92–80338.

United States District Court,
E.D. Michigan, S.D.

Sept. 15, 1993.

Robert P. Cares, Asst. U.S. Atty., Detroit, MI, for plaintiff.

N.C. Deday LaRene, Detroit, MI, for defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

GADOLA, District Judge.

Defendant Kenneth Christunas moved during trial for a judgment of acquittal pursuant to Fed.R.Crim.Pro. 29 as to Count V of the Superseding Redacted Indictment (Conspiracy to Launder Monetary Instruments) and Count VII of the Superseding Redacted Indictment (Continuing Criminal Enterprise). The court took the motion under advisement and allowed the counts to be submitted to the jury. The jury found defendant guilty on all counts of the indictment, including Counts V and VII. The court then requested that the parties submit briefs on their respective positions as to the Rule 29 motion.

### I.  Standard of Review

In ruling on a defendant's motion for judgment of acquittal, brought pursuant to Fed.R.Crim.Pro. 29, a district court must view the evidence and the possible inferences to be drawn therefrom, in the light most favorable to the government. *United States v. Overmyer*, 867 F.2d 937, 938 (6th Cir.), *cert. denied*, 493 U.S. 813, 110 S.Ct. 60, 107 L.Ed.2d 27 (1989). The issue is whether there was presented at trial evidence from which a reasonable mind could fairly find guilt beyond a reasonable doubt. *Id.*

### II.  Count V—Conspiracy to Launder Monetary Instruments

Count V of the Superseding Redacted Indictment charges defendant with conspiring to violate 18 U.S.C. § 1956(a)(2)(A). This section reads in relevant part:

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

(A) with the intent to promote the carrying on of specified unlawful activity;

18 U.S.C. § 1956(a)(2)(A). Factually, this charge arises out of the government's allegation that in or about August 1986, defendant gave $100,000 to Robert Michelson for the purchase of the freighter, Artic Seal, by means of which defendant and his co-conspirators intended to transport large loads of marijuana from Colombia to Southern Florida and from there to Michigan for distribution. In or about August 1986, Thomas Wells purchased the Artic Seal. From approximately August 1986 to October 1987, the Artic Seal was being retrofitted so that it

could transport large loads of marijuana from Colombia to the United States.

According to the government, the facts offered at trial to support this allegation are as follows:

Robert Michelson testified that he was approached by Thomas Wells, who had marijuana connections in Colombia. Wells suggested that Fredrikson get in touch with defendant to finance the purchase of an ocean-going vessel. As consideration for this financial arrangement, defendant would receive 1/3 of the first load on the freighter (approximately 1,200 pounds) at $45 a pound, which was the Colombian rate, instead of $325 to $350 a pound, which was the wholesale rate paid in the United States.

Page 3 of Government's Response Brief. The freighter was seized by the government prior to ever making a journey to South America.

There was no evidence presented at trial of any discussions among defendant and his co-conspirators of how or where the marijuana would be paid for. The government argues, nevertheless, that

the nature of the agreement and the defendant's interest in obtaining large amounts of marijuana from a Colombian supplier at cut-rate prices inevitably leads to the conclusion that the parties had a tacit understanding that currency would, at some future date, by someone in the chain of supply and payment, be transported from the United States to Colombia. How else could the defendant have expected to receive [1,200] pounds of marijuana?

*Id.* at Page 5.

The court disagrees with the proposition that there could have been only one method of payment called for by the nature of the transaction. It is possible that the defendant and his co-conspirators contemplated paying for the marijuana in Florida, perhaps through making payment to a resident agent of the Colombian dealers. With no evidence, one can only speculate.

■ A conspiracy conviction requires some evidence of an agreement among the conspirators and knowledge on the part of each of the conspirators that the agreement had the specific unlawful purpose charged in the indictment. *United States v. Inigo,* 925 F.2d 641, 652 (3rd Cir.1991). Speculation as to what agreement, if any, the defendant and his co-conspirators made regarding payment is not a proper basis for conviction. Thus, viewing the evidence in a light most favorable to the government, the court finds that there was not sufficient evidence as to Count V, upon which a reasonable mind could fairly find guilt beyond a reasonable doubt. Therefore, the court will grant defendant's motion for judgment of acquittal as to Count V of the Superseding Redacted Indictment.

### III. *Count VII—Continuing Criminal Enterprise*

Defendant's motion for judgment of acquittal also challenges the sufficiency of the evidence as to Count VII of the Superseding Redacted Indictment. Count VII charges defendant with violating 21 U.S.C. § 848 by engaging in a continuing criminal enterprise. Continuing criminal enterprise is defined in section 848(c) as the commission of a continuing series of violations of title 21 or title III,

which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and [ ] from which such person derives substantial income or resources.

18 U.S.C. § 848(c)(2)(A).

The defendant concedes that the evidence established his supervision and control of Patrick Ogle and John Fredrikson.

The issue therefore is whether the evidence, viewed in a light most favorable to the government, supports a finding, by a reasonable trier of fact and beyond a reasonable doubt, that there were at least three more persons whom defendant organized, supervised or otherwise managed. *Overmyer,* 867 F.2d at 938. The government argues that there was ample evidence that defendant also supervised and directed Robert Johnson, Herbert Micou, Robert Rilley, Thomas Christunas, Ernie Christunas, Gary Sancho,

James Christunas, and Arthur Ricky Brayman.

■ Because James Christunas and Arthur Ricky Brayman were acquitted at trial, these persons cannot be counted in determining whether the defendant acted in concert with five or more persons whom he organized, managed, or supervised. *United States v. Patrick*, 965 F.2d 1390, 1396 (6th Cir.1992).

■ The court has no doubt that the evidence, viewed in a light most favorable to the government, supports a finding that Robert Johnson was under the supervision and control of defendant for purposes of section 848. There was testimony that marijuana was stored on Johnson's property and that Johnson had access to safe-deposit boxes opened in the name of Kenneth Christunas.

There also was testimony from Michelson and others that Kenneth Christunas was the decision-maker with respect to quality and price, and that when Michelson received a load of marijuana he would always call Kenneth. Following such a telephone call, others, including Johnson, would arrive to transport the marijuana to Michigan by automobile. Michelson gave as an example an occasion when some marijuana arrived that had gotten soaked with sea water and mixed up with seaweed on the journey from South America. Michelson termed this marijuana, "Monkey Paws." On this occasion, it was defendant who came to Florida to look over the Monkey Paws to decide whether he would still want to purchase it and at what price. While not conclusive of guilt, when viewed in a light most favorable to the government, this evidence does support the reasonableness of the trier of fact's finding that Robert Johnson was one of those persons

under defendant's control and supervision and did conspire with defendant for purposes of section 848.[1]

The evidence with respect to defendant's alleged supervision of Herbert Micou was testimony that large amounts of marijuana were delivered to and stored in Micou's garage, and the undisputed evidence that defendant on one occasion used Herbert Micou's automobile to transport marijuana from Florida to Michigan. The government cites to *United States v. Chalkias*, 971 F.2d 1206, 1214 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992), for the proposition that storage on another's property alone is sufficient to establish a defendant's managerial capacity over that person.

■ As to Robert Rilley, Thomas Christunas, and Ernie Christunas, the government points to evidence that these persons transported marijuana. The government also argues that defendant can be held to have had a managerial relationship with Thomas Herring, who Carol Bowman testified had, on more than one occasion, transported marijuana from Texas to Michigan. Again, the government points to *Chalkias* for the proposition that having another transport drugs is sufficient by itself to establish a defendant's managerial control over that person. *Id.* The government maintains that the fact that Michelson would call defendant to report that marijuana had arrived in Florida and that subsequent to the call, the above-named persons would, on occasion, be those who arrived to transport the marijuana, supports the inference that the defendant was their organizer, manager or supervisor.

■ The government further contends that the evidence supports a finding that defendant had a managerial role with respect

---

1. Defendant argues, on the other hand, that simply being the contact for one supplier does not establish that defendant was the organizer, manager or supervisor of those who ultimately arrived to transport the marijuana. Defendant, as an example of how control of the operation was shared, points to the evidence that for the Texas connection, namely Carol Bowman, it was defendant's brother David who was the contact person. The defendant also points out that there was testimony that defendant's brother Thomas Christunas made decisions as to whether to pur-

chase marijuana of a certain quality. Defendant's claim essentially is that while he was a decision-maker within the organization, he was not an organizer, manager or supervisor of five or more persons. Defendant argues that he was related to, that is, he was the brother of many of the people charged with being involved in the conspiracy to distribute marijuana and that he and they shared responsibility for the dealings, with no one person managing five or more others.

to Gary Sancho. There was evidence at trial that defendant "fronted" marijuana to Sancho, that is, sold marijuana on consignment, and that Sancho was asked one time to help defendant "get rid" of some low-quality marijuana. The government cites to *United States v. Adamo*, 742 F.2d 927, 932–33 (6th Cir.1984), for the proposition that consignment sales are sufficient indicia of a managerial relationship under section 848.[2]

■ The government argues that the evidence also supported a finding that Dan Ashley was under the managerial direction of defendant. The testimony of Carol Bowman established that Dan Ashley purchased marijuana on behalf of David Christunas. On one occasion, David Christunas used the expression "we'll" buy a lot of it, when offering to purchase more marijuana if the price was right. The government argues that "we'll" was later shown to refer to the entire Christunas organization and therefore, by implication, to defendant and his managerial control over that organization.

■ In reviewing the sufficiency of the evidence with respect to a charge of engaging in a continuing criminal enterprise, the court must determine whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Davis*, 809 F.2d 1194, 1203 (6th Cir.1987). Circumstantial evidence and the uncorroborated testimony of an accomplice may be included in the court's assessment of the sufficiency of the evidence. *Id.*

■ In applying the concepts of supervision, organization and management with respect to section 848, the United States Court of Appeals for the Sixth Circuit has held that it is not necessary for the government to establish that the defendant had personal contact with those he supervised or that he supervised the five persons at the same time. *Id.* at 1204. It also is not necessary that the defendant be the sole "kingpin" in the organization. *Id.* In short, the relationship requirement is flexible. *Id.*

Given the appellate court's flexible approach to the evidence required to support a conviction under section 848 and given that the court is obligated to view the evidence and the inferences to be drawn therefrom, in a light most favorable to the government, the court concludes that a rational trier of fact could have found beyond a reasonable doubt that Kenneth Christunas coordinated the activities of Patrick Ogle, John Fredrikson, Robert Johnson, Don Ashley, Gary Sancho, and Thomas Herring, among others. Therefore, defendant's Rule 29 motion with respect to Count VII of the Superseding Redacted Indictment shall be denied.

## ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for judgment of acquittal as to Count V of the Superseding Redacted Indictment, brought pursuant to Fed.R.Crim. Pro. 29, is **GRANTED;** a judgment shall be entered in accordance with this order.

It is further **ORDERED** that defendant's motion for judgment of acquittal as to Count VII of the Superseding Redacted Indictment, brought pursuant to Fed.R.Crim.Pro. 29, is hereby **DENIED. SO ORDERED.**

---

2. Defendant, on the other hand, cites to law which holds that customers are not to be counted as within a defendant's managerial control unless the defendant dictated prices or designated customers or territory. *United States v. Patrick*, 965 F.2d 1390, 1396 (6th Cir.1992). Defendant further argues that consignment sales alone have never been held, by themselves, to be sufficient indicia of managerial control for purposes of section 848. *See e.g., United States v. Jones*, 801 F.2d 304, 308–09 (8th Cir.1986).