32 F.3d 569
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cornelius LANCASTER, Defendant-Appellant.
 No. 93-3906.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1994.
 
 Before: JONES and RYAN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 A jury convicted Cornelius Lancaster on several drug-related counts. Lancaster appeals his sentence, raising three issues: whether the district court erred in calculating the quantity of drugs for sentencing purposes; whether the district court erred in assigning him a two offense level increase for possession of a firearm; and whether the district court erred in not departing downward because his criminal history category overstates the seriousness of his actual criminal history. We affirm the district court's decision on all three issues.
 
 I.
 
 2
 On January 4, 1992, a Cincinnati police officer stopped Darryl Cummins for a routine traffic violation. During the stop, the officers discovered three ounces of crack cocaine in Cummins' car. Cummins agreed to cooperate with the Cincinnati police and the FBI and informed them that the cocaine belonged to defendant, Cornelius Lancaster. Cummins also told the authorities that he had more of Lancaster's cocaine at an apartment he used primarily for storage.
 
 
 3
 Cummins consented to a search of the apartment. During the search, authorities found $5,000, the keys to one of Lancaster's cars, a picture of Lancaster sitting on one of his cars, nine ounces of crack cocaine, two ounces of powder cocaine, and a MAC 10 nine millimeter semi-automatic weapon. Cummins testified that the drugs, the cash, and the gun belonged to Lancaster. Another witness corroborated this information. Cummins also testified that he worked for Lancaster and that Lancaster had given him the gun to protect the drugs and the cash kept at the apartment.
 
 
 4
 Simultaneous with the Lancaster investigation, the FBI conducted an investigation of a man named Mohammed Abu-Nada. After discovering some evidence linking Abu-Nada and Lancaster, the FBI questioned Abu-Nada about Lancaster. Abu-Nada testified that he and Lancaster were partners and that Lancaster purchased twelve kilos of cocaine from him.
 
 
 5
 A jury convicted Lancaster on five drug-related counts, including possession with intent to distribute and money-laundering. After Lancaster's conviction, the trial court ordered the preparation of a presentence report. The PSR recommended that Lancaster be assigned a base offense level of 44 and a criminal history category of VI, based on 25 criminal history points. Lancaster filed objections to the PSR, and the district court sustained some of those objections. The district judge assigned Lancaster a base offense level of 36 and a criminal history category of VI. The judge sentenced Lancaster to 360 months each on Counts 1 and 6 and to 240 months each on Counts 3, 4, and 5. All sentences are to run concurrently. The court also sentenced Lancaster to five years of supervised release and a $250 special assessment. Lancaster now appeals.
 
 II.
 
 6
 In reviewing federal guideline sentences, this court must determine whether the sentence 1) was imposed in violation of law; 2) was imposed as a result of an incorrect application of the guidelines; 3) is outside the applicable guideline range and is unreasonable; or 4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable. 18 U.S.C. Sec. 3742(e); see United States v. Dellinger, 986 F.2d 1042, 1043-44 (6th Cir.1993).
 
 
 7
 We apply a clearly erroneous standard of review to the district court's factual findings, and, while giving due deference to the district court's application of the guidelines to those facts, we render de novo review of the district court's legal conclusions. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 III.
 A. Quantity of Drugs
 
 8
 The district court held Lancaster responsible for twelve kilos of powder cocaine, in connection with his relationship with Abu-Nada, and twelve ounces of crack cocaine, the three ounces in Cummins' car plus the nine ounces in the apartment. Following the Sentencing Guidelines, the court converted these quantities into a marijuana equivalency and added them together. The result, according to U.S.S.G. Sec. 2D1.1(c)(5), is a base offense level of 34.
 
 
 9
 Lancaster claims the trial court erred by including the twelve kilos of powder cocaine in the base offense level, as the only evidence linking Lancaster with the twelve kilos was the "uncorroborated, suspect and self-serving testimony" of Abu-Nada. We need not resolve this issue. Even if we were to decide in favor of Lancaster, we would be bound to uphold the district court's calculations. Excluding the twelve kilos of powder cocaine would leave Lancaster with responsibility for twelve ounces of crack cocaine. These twelve ounces of crack are enough, in and of themselves, to warrant a base level offense of 34. Lancaster, therefore, did not suffer any prejudice by the inclusion of the twelve kilograms of powder cocaine in the calculation of his base offense level.
 
 B. Enhancement for Possession of a Firearm
 
 10
 The district court assigned Lancaster a two offense level enhancement for possession of a firearm, pursuant to U.S.S.G. Sec. 2D1.1(b)(1). Lancaster contests this enhancement, arguing that the only evidence supporting it is the unreliable testimony of Cummins.
 
 
 11
 The federal sentencing guidelines mandate a two-level increase in a defendant's base offense level when "a dangerous weapon (including a firearm) was possessed" during a drug-related crime. U.S.S.G. Sec. 2D1.1. As the sentencing guidelines commentary explains:
 
 
 12
 The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.
 
 
 13
 U.S.S.G. Sec. 2D1.1, App. n. 3. See also United States v. Chalkias, 971 F.2d 1206, 1216 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992).
 
 
 14
 Possession of a firearm may be actual or constructive. " '[O]wnership, dominion, or control' over the [firearm] 'or dominion over the premises' where the [firearm] is located" will suffice. United States v. Snyder, 913 F.2d 300, 304 (6th Cir.1990), cert. denied, 498 U.S. 1039 (1991). Moreover, this court has found that "possession of a gun by one co-conspirator is attributable to another co-conspirator if such possession constitutes reasonably foreseeable conduct." Chalkias, 971 F.2d at 1217. The test as to whether conduct is reasonably foreseeable is an objective one. Id.
 
 
 15
 Lancaster bears the burden of proving that the district court's factual findings were clearly erroneous, and he has not carried this burden. Cummins testified that the gun found in the apartment was Lancaster's and that Lancaster gave it to Cummins to help protect Lancaster's drugs. Lancaster's only rebuttal to this testimony is an attack on Cummins' veracity. Lancaster has not presented any evidence disputing that testimony, and he has not presented any evidence showing that the district court erred in allocating him constructive possession of the gun. Accordingly, we hold the district court did not err in assigning Lancaster the two offense level enhancement.
 
 C. Downward Departure
 
 16
 Lancaster moved the district court for a downward departure, arguing that his criminal history category overstated the seriousness of his past criminal activity. Lancaster was assigned twenty-five criminal history points, thirteen of which were for driving with a suspended license. The district court refused to depart. On appeal, Lancaster contends that the district court's refusal was error. We do not reach this issue, as this court lacks authority to hear an appeal of a district court's discretionary refusal to depart downward. United States v. Velez, 1 F.3d 386, 389 (6th Cir.1993); United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989).
 
 IV.
 
 17
 For the foregoing reasons, we affirm.