**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jessie ANDERSON, Defendant–Appellant.**

No. 94–2399.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1996.

Decided July 24, 1996.

E. James King (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff-Appellee.

John B. Payne, Jr. (argued and briefed), Dearborn, MI, for Defendant-Appellant.

Before: KENNEDY and COLE, Circuit Judges; ALDRICH, District Judge.[*]

KENNEDY, Circuit Judge.

Defendant Jessie Anderson appeals his conviction and sentence for conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; use of a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 924(c); and possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g). Defendant argues that there was insufficient evidence to show involvement in an ongoing conspiracy to distribute drugs; that the District Court erred in denying his severance motion when evidence presented to support co-defendants' convictions involved murders and attempted murders; that the Court erred in allowing a DEA agent to offer expert testimony without first qualifying him as an expert witness; and that it erred by failing to make specific findings on the amount of drugs attributable to the defendant. For the following reasons, we affirm defendant's convictions and sentences under 21 U.S.C. § 846 and 18 U.S.C. § 922(g). However, we vacate defendant's conviction under 18 U.S.C. § 924(c), for the jury instructions on using or carrying a firearm in relation to a drug trafficking offense constitute plain error after *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

## I

On December 8, 1992, a grand jury in the federal District Court for the Eastern District of Michigan indicted twenty-nine defendants for participating in a large-scale narcotics distribution organization in Detroit, Michigan known as the "Best Friends." The various defendants were charged with, among other things, conspiracy to possess with intent to distribute and to distribute cocaine, possession and distribution of cocaine, money laundering, continuing criminal enterprise, intentional killings, and various firearm violations.

Defendant was named in five counts of the fifty-six count indictment. In count one, he was charged with conspiring with other members of the "Best Friends" organization to possess with intent to distribute and to distribute cocaine; as an example of one of the conspiracy's overt acts, the indictment alleged that defendant sold approximately 124 grams of cocaine to one of the identified members of the "Best Friends" organization, Nathaniel Craft. In count five of the indictment, defendant was accused of knowingly and willfully distributing cocaine on March 8, 1991. In count six, defendant was charged with knowingly and willfully possessing with intent to distribute cocaine on April 4, 1991. In count twenty-eight, defendant was charged with using or carrying a firearm in relation to a drug trafficking crime. Finally, in count twenty-nine, defendant was accused of knowingly possessing a firearm after having been previously convicted of a felony.

During trial, the government brought four witnesses to testify to defendant's alleged role in the conspiracy. The first witness, Nathaniel Craft, was a member of the "Best Friends" organization who served as a bodyguard, drug courier, and contract killer, and who trained other "Best Friends" members in "shooting, fighting, how to manipulate cars" and in using firearms to kill.

Craft testified that he knew defendant "[t]hrough members of Best Friends," and that he first met defendant in 1987 when defendant purchased one-half kilogram of cocaine from one of the leaders of the Best Friends organization, Reginald Brown. Craft then testified that the next time he had any contact with defendant was roughly five years later, on March 8, 1991, when he arranged with DEA Agent Anthony Pratapas

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

to purchase drugs from defendant. Craft testified that he went to defendant's apartment and told defendant that he needed to purchase a small amount of drugs. Defendant sold Craft approximately 124 grams of cocaine.

Craft testified that he introduced defendant to Agent Pratapas approximately one week after purchasing the 124 grams of cocaine. Craft testified that the meeting between Pratapas and defendant took place on Belle Isle, and that the purpose of the meeting was "[t]o see about purchasing a much bigger amount of drugs." Craft testified that he was looking to purchase "anywhere from three, four, five more [kilograms]." Craft also testified that he regularly delivered cocaine to Lima, Ohio and to Toledo, Ohio during his association with the "Best Friends" organization.

The next witness to testify about defendant's alleged crimes was DEA Agent Gerry Carmack. Agent Carmack testified that he executed a search warrant at defendant's apartment on April 4, 1991. Agent Carmack testified about the various items discovered in defendant's apartment, which included: a triple beam scale with a white powder residue on the paddle of the scale; an electronic scale also appearing to be covered with a white powdery substance; a plastic bag containing $3400; a shoe box containing a plastic bag filled with a white powdery substance; an additional plastic bag filled with a white powdery substance; a pager with a phone number assigned to an area code (419) that includes Lima, Ohio; a notebook filled with names and numbers; and a semi-automatic nine millimeter handgun, which was located in the back bedroom under the mattress. On several occasions during his testimony, Agent Carmack noted that, in his experience, the particular items found in defendant's apartment were consistent with drug trafficking. Agent Carmack was not qualified as an expert witness before testifying.

The third witness offering testimony of defendant's participation in the conspiracy was Macio Brown, who was another member of the "Best Friends" organization. Brown testified that in 1987 or 1988 he saw defendant purchase one-eighth kilogram of cocaine from one of his cousins, Thomas Carr, who also was a member of the organization.

The final witness offering testimony tending to incriminate defendant was DEA Agent Anthony Pratapas. Agent Pratapas testified that Nathaniel Craft introduced him to defendant on May 21, 1991 on Belle Isle. Agent Pratapas testified that when he began discussing prices for kilogram quantities of cocaine, defendant informed him that he could purchase cocaine from defendant at $29,000 per kilogram. Agent Pratapas testified that defendant indicated that defendant's cocaine supplier was named "Boog."[1] Agent Pratapas testified that "Boog" was the street name for Terrance Brown, who was a leader of the "Best Friends" organization.

During trial, the government also presented evidence that when agents executed the search warrant at Anderson's apartment, they saw Anderson in the back bedroom of the apartment reaching under a mattress. The officers found a handgun in the mattress in the area defendant was reaching.

On April 11, 1994, defendant was tried together with co-defendants William Wilkes, Michael Smith, and Tyreese Washington. The jury found defendant not guilty of distribution of cocaine and possession with intent to distribute. However, the jury found defendant guilty of conspiracy to possess with intent to distribute and to distribute cocaine, using a firearm during a drug trafficking offense, and possessing a firearm as a felon.

In sentencing defendant to a term of 120 months concurrently for his convictions under counts one and twenty eight, and sixty months consecutive for count twenty-nine, the District Court noted that it was sentencing defendant at "the low end of the guideline range as that sentence adequately reflects the defendant's participation in the conspiracy." The court found that approximately twelve and three-quarter kilograms of cocaine were attributable to defendant. The court made specific findings showing its calculations and indicating the source of evi-

---

1. Defendant does not deny telling Agent Pratapas that his supplier was named "Boog." Instead, he claims that "Boog" was the street name of Nathaniel Craft.

dence on which it based its findings for each of the various amounts leading to the total. Defendant filed a timely notice of appeal.

## II

### A

■ Defendant's first argument is that there was insufficient evidence to sustain the jury's guilty verdict on his conspiracy count. Ordinarily we would review such a claim to determine whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *See, e.g., United States v. Ferguson,* 23 F.3d 135, 140 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994). However, as defendant's trial attorney did not make a Rule 29(a) motion for acquittal at the close of the government's case or before the case was submitted to the jury,[2] we review only for plain error. *United States v. Rodriguez,* 882 F.2d 1059, 1063 (6th Cir.1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). As the Supreme Court has noted, "[t]he Courts of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993), quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).

■ Defendant argues that there was insufficient evidence of an agreement between defendant and the rest of the members of the "Best Friends" organization, for the government could only show that defendant bought drugs from the "Best Friends" organization on a few occasions. To obtain a conspiracy conviction under 21 U.S.C. § 846, "the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir. 1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991). In this regard, the government need not show a formal, written agreement among the co-conspirators. *Id.* But it still must show an agreement beyond a reasonable doubt.

■ This Court has noted that "it is generally held that a buyer-seller relationship is not alone sufficient to tie a buyer to a conspiracy," *United States v. Grunsfeld,* 558 F.2d 1231, 1235 (6th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977) (citing cases), for mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy. However, "where there is additional evidence beyond the mere purchase or sale, from which knowledge of the conspiracy may be inferred, courts have upheld conspiracy convictions." *Id.; see also United States v. Baker,* 905 F.2d 1100, 1106 (7th Cir.), *cert. denied,* 498 U.S. 876, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990) (holding that mere buyer/seller relationship alone does not support conspiracy conviction, but evidence of "repeat purchases or some other enduring arrangement that implies knowledge of the scope of the conspiracy" may be sufficient).

In *United States v. Phibbs,* this Court rejected a defendant's sufficiency of the evidence claim on his conspiracy conviction because circumstantial evidence established defendant's role in and knowledge of the conspiracy. 999 F.2d 1053, 1063–64 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). We not-

---

2. Because defendant's trial counsel did not move for a judgment of acquittal under Fed.R.Crim.P. 29, which could be considered the *sine qua non* of an adequate and competent defense, we must review the sufficiency of evidence only for plain error. Likewise, because trial counsel did not renew his severance motion at the close of evidence, we can only review the District Court's decision to try defendant with several co-defendants for plain error. Finally, because trial counsel did not object to Agent Carmack's testi-

mony on the grounds that he was not qualified as an expert witness, we review its admission only for plain error.

Defendant's new attorney for this appeal claims that defendant was convicted of all three counts on which he was indicted. App. Br. at 3. Defendant was indicted on *five* counts and found not guilty on two: distribution of cocaine and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

ed that when defendant first met the witness, they both went to the back of defendant's jewelry store, at which point a third person, the supplier, asked the witness and the defendant whether they would have any problem dealing with each other. *Id.* at 1063. The defendant and witness then exchanged telephone numbers and beeper numbers and codes. *Id.* After the initial introduction, the witness regularly delivered ten-ounce quantities of cocaine to defendant and received cash in return. The witness's ledger entries indicated delivery of cocaine to defendant. *Id.* at 1063–64. This Court noted that the backroom discussion demonstrated that defendant was "not simply a street buyer engaging in a discrete transaction, but that he knew he was involved in an ongoing conspiracy of some dimension." *Id.* at 1064.

In *United States v. Grunsfeld,* we rejected a similar argument that defendants were not involved in a conspiracy because they only purchased drugs from conspirators but were not involved with the actual conspiracy itself. 558 F.2d 1231, 1235–36 (6th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977). After noting that "where there is additional evidence beyond the mere purchase or sale, from which knowledge of the conspiracy may be inferred," *id.* at 1235, we found such evidence in a defendant's willingness to provide an outlet for drugs and extend credit to one of the conspirators and in one defendant's statement to DEA agents that he could produce 1,000,000 PCP tablets in ten hours and that his organization had sold 5,000,000 tablets over the summer—all these circumstances, we held, "distinguish the involvement here from a mere casual sale by someone who was unaware of the scope of the conspiracy." *Id.*

■ A rational trier of fact could conclude that defendant was involved in a conspiracy to distribute drugs with other members of the "Best Friends" organization. First, defendant purchased a significant amount— one-half kilogram on one occasion and one eighth kilogram on another—of cocaine from "Best Friends" members. As we noted in *United States v. Bourjaily,* "[a] large volume of narcotics creates an inference of a conspir-

acy." 781 F.2d 539, 545 (6th Cir.1986), *aff'd,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

Second, Agent Pratapas testified that defendant told him that defendant's cocaine supplier was "Boog" and that defendant could supply Pratapas with cocaine for $29,-000 per kilogram. Agent Pratapas testified that "Boog" is the nickname for Terrance Brown, who was one of the leaders of the "Best Friends" organization. Defendant claims that "Boog" is also the nickname of Nathaniel Craft, the former "Best Friends" member who testified against him during trial. Viewing the evidence in the light most favorable to the government, as is our duty when a defendant challenges the sufficiency of evidence on which his conviction was based, *United States v. Winston,* 37 F.3d 235, 238 (6th Cir.1994), we find that a rational trier of fact could choose to believe Agent Pratapas over the defendant and decide that "Boog" was in fact Terrance Brown. Since Brown was the head of the "Best Friends" and since a jury could believe that defendant identified Brown as his supplier, a jury could also infer that defendant was part of the "Best Friends" conspiracy to distribute cocaine.

Third, the jury heard evidence that when a search warrant was executed at defendant's apartment, DEA officials found a pager that had an area code which included the area in and around Lima, Ohio. The jury also heard Nathaniel Craft testify that one of his duties as a member of the "Best Friends" organization was to transport drugs between Detroit and Lima, Ohio. The jury could reasonably infer that defendant's possession of a pager in Detroit, Michigan that had an area code for Lima, Ohio showed a connection between defendant and the "Best Friends" conspiracy.

Finally, the jury heard Craft testify that defendant had purchased one-half kilogram of cocaine from one of the "Best Friends" members, and it heard Macio Brown testify that defendant had purchased one-eighth kilogram from the "Best Friends." Since the jury was presented with significant evidence that defendant was heavily involved in drug trafficking, it could infer that the source of

his drugs remained fairly constant. Such a continuing supply would be sufficient for a jury to find that defendant had knowledge of the conspiracy and was involved as a distributor, rather than simply being a one-time purchaser who had no knowledge of the scope of the conspiracy.

For these reasons, we find that defendant has not met his burden of showing plain error.

### B

Defendant next argues that the District Court erred by denying his motion to sever his trial from those of his co-defendants, all of whom were named in the same indictment. Persons jointly indicted should, as a general rule, be tried together, for "there is almost always common evidence against the joined defendants that allows for the economy of a single trial." *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). Accordingly, we review a district court's denial of defendant's motion for severance for abuse of discretion. *Id.* Moreover, where, as here, the defendant does not renew his severance motion at the close of evidence, we can reverse only upon a showing of plain error. *See United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir.), *cert. denied*, 506 U.S. 940, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992); Fed.R.Crim.P. 52(b).

Defendant argues that the District Court abused its discretion in failing to grant defendant's severance motion because "the Government was allowed to put on evidence of multiple murders and attempted murders, even though there was no indication [defendant] had anything to do with them." The government responds that there was a factual similarity in the charged offenses, an overlap of participants, and shared goals. The government also argues that defendant cannot show substantial prejudice because the quantity or complexity of the evidence was slight and because the jury actually acquitted the defendant on two of the charges. Since, generally speaking, a spillover of evidence from one case to another does not require severance, *Phibbs*, 999 F.2d at 1067, we do not believe defendant has shown plain error.

### C

Defendant next argues that the District Court erred when it allowed DEA Agent Gerry Carmack to testify that evidence he found when executing a search warrant at defendant's apartment—a triple beam scale with a white powder residue on the paddle of the scale, an electronic scale also appearing to be covered with a white powdery substance, a plastic bag containing $3400, a shoe box containing a plastic bag filled with a white powdery substance, an additional plastic bag filled with a white powdery substance, a pager, a nine-millimeter semi-automatic handgun, and a notebook filled with names and numbers—were consistent with drug trafficking. Agent Carmack offered this testimony even though he had not been qualified as an expert witness.

In *United States v. DeClue*, we rejected appellant's contention that the district court had abused its discretion by allowing an IRS agent to provide her computation of the amount of back taxes owed by the defendant without having first qualified the agent as an expert witness. 899 F.2d 1465, 1473 (6th Cir.1990). After citing *United States v. Green*, 548 F.2d 1261, 1268 (6th Cir.1977), which adopted a four-point test to review district courts' decisions regarding expert testimony, the Court made its own independent analysis of the IRS agent's qualifications and found that she met the *Green* criteria:

> Her degree and experience qualify her as an expert and she testified on a proper subject, conforming to a generally accepted explanatory theory.

*DeClue*, 899 F.2d at 1473. We shall make the same type of analysis.

In this case, Agent Carmack testified that he had over nine years of law enforcement experience before joining the DEA in 1991 and that he had participated in other drug raids. Thus, Agent Carmack would in all probability have been qualified as an expert if the defendant had raised any challenge to Agent Carmack's conclusion that the evidence in defendant's apartment was con-

sistent with drug trafficking. Moreover, since defendant did not object to Agent Carmack's testimony, we review it only for plain error. *United States v. Markum,* 4 F.3d 891, 895 (10th Cir.1993). We find no such error.

### D

■ Finally, defendant argues that the District Court erred when it sentenced him without making specific factual findings regarding the amount of cocaine that could reasonably be attributed to him.

We share defendant's understanding of the law. As we noted in *United States v. Ferguson,*

> [i]n arriving at a total quantity [of drugs for which a defendant is to be held accountable], the district court must explicitly set forth the evidence on which it relies, and make specific findings that are supported by a preponderance of the evidence.

23 F.3d 135, 142 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994) (quotation marks omitted). But we do not share his understanding of what happened at his sentencing hearing.

The District Court made specific findings as to how much cocaine was attributable to defendant. The District Court used a chart that documented the amounts of cocaine that could be attributed to defendant and the source of evidence for each of the occasions on which the defendant could be linked to the drugs.[3] The District Court's thorough findings are not clearly erroneous.

### III

■ At oral argument, this Court raised the question of whether defendant's conviction for using or carrying a gun in relation to a drug offense, in violation of 18 U.S.C. § 924(c), was invalid after *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). After considering oral argument and supplemental briefs submitted

thereafter, we vacate defendant's conviction under § 924(c).

Under 18 U.S.C. § 924(c), "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years...." In *Bailey v. United States,* the Supreme Court held that to distinguish "use" from mere possession, Congress must have intended for use to mean active employment of a gun through "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." —— U.S. at ——, 116 S.Ct. at 508. In doing so, the Court rejected a more expansive interpretation of use under which a defendant "uses" a gun when he "conceals a gun nearby to be at the ready for an imminent confrontation." *Id.*

At trial, Agent Michael Blackwood, the first agent to enter Anderson's apartment when agents executed a search warrant, testified that when he entered the apartment he saw Anderson in the back bedroom. Blackwood testified that Anderson "was attempting to reach, what looked to me like a weapon. He was in the process of reaching down from right next to the bed towards the bed. He looked like he was reaching for something." Blackwood also described Anderson's response when he asked him what he was doing by the bed:

> I had removed him into the living room, read him his rights, located a weapon, 9 millimeter Taurus in the exact position where Mr. Anderson was standing and where he was reaching. I went in and asked him what he was doing reaching towards the weapon.
>
> He indicated, I didn't think you were the cops. He indicated it was a rip off. He had a number of friends who have been killed by people, saying we are the police and coming in to kill the people, and so I didn't think you were the police.

The government argues that these facts show that Anderson had not merely placed a gun

---

**3.** Indeed, the District Court's explication of the amounts of cocaine attributable to defendant produced a total amount—approximately twelve and three-quarter kilograms of cocaine—that was four kilograms fewer than the amount suggested in the probation department's presentence report.

in the vicinity with the intent to use it during a confrontation but, rather, took the active step of reaching for it. This active step, it claims, distinguishes the case from the concerns the Supreme Court addressed in *Bailey*, where it found that neither placing a firearm inside a bag in a locked car trunk, nor placing an unloaded, holstered firearm in a locked footlocker in a bedroom closet constituted use under § 924(c). In the present case, the government argues, the defendant placed the gun in hiding *and* reached for the gun. Thus, the government argues that "Anderson was attempting to get this weapon and moments later admitted he was attempting to retrieve his weapon and put it to use for fear of a 'rip off.'" The government also argues that reaching for the gun is equivalent to "attempting to fire," which was in the list of possible active employments mentioned by the Court.

■■■■■ We first note that, to the extent the government is arguing that Anderson can be found guilty under § 924(c) for attempting to use a gun, without more, the government's claim must fail. To attempt a federal crime is not, of itself, a federal crime. Attempt is only actionable when a specific federal criminal statute makes it impermissible to attempt to commit the crime. *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir.1985), *cert. denied*, 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *United States v. Manley*, 632 F.2d 978, 987 (2d Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. York*, 578 F.2d 1036, 1038 (5th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). Here, § 924(c), among other things, makes it a crime to use or carry a firearm during a drug trafficking offense; it does not specifically criminalize an *attempt* to use or carry a firearm during such an offense.

Moreover, we do not think the Court intended "attempting to fire" a gun to include reaching for a gun hidden underneath a mattress. "[A]ttempting to fire" came at the end of the Court's list of ways in which a gun might be actively employed. Each action on this list—"brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire"—occurs typically when

the gun is in a defendant's hand. Looking to the context in which "attempting to fire" appears, we believe the Court contemplated an action in which the defendant has the gun in his hand and tries to fire the gun by pulling the trigger. Since the gun was not in defendant's hand, and, indeed, apparently was not seen until the agents looked under the mattress, defendant's actions in reaching near the mattress where the gun was ultimately found do not constitute "attempting to fire."

Nevertheless, the Court indicated that a defendant may actively employ a handgun that he is not holding:

> even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."

*Bailey,* —— U.S. at ——, 116 S.Ct. at 508. Conversely, the Court noted, "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" *Id.* Although the court did not explain why it found verbal, or tacit but effective reference to a gun analogous to actions in which the gun is in the defendant's hand, we believe it is because they constitute reliable objective manifestations of the defendant's intent to use the gun in connection with the underlying offense. In contrast, factfinders attempting to determine whether a gun found near drugs was "used" during a drug trafficking crime have far less reliable circumstances upon which they draw an inference regarding defendant's intent; such an inquiry would depend on proximity, time of placement, accessibility—all the items in the multifactor test rejected by the Supreme Court in *Bailey*. Thus, *Bailey* represents the Supreme Court's concern that factors such as proximity and accessibility are insufficiently reliable indicators of intent to use a gun during a drug offense or crime of violence. By limiting use to situations in which the gun is in defendant's hand or where the defendant manifests his intent to use the gun by referring to it in such a way as to influence others, the Court sought to reduce the potential for

erroneous determinations regarding defendant's intent.

■ Understanding *Bailey* in this light, we find that, under the facts as alleged, defendant's actions constitute use for purposes of § 924(c). If defendant had merely placed his gun under the mattress, *Bailey* would prevent a finding of use. But here, evidence disclosed defendant reached for the gun as the police entered his apartment; his act of reaching for the gun was "calculated to bring about a change in the circumstances of the predicate offence," *Bailey*, —— U.S. at ——, 116 S.Ct. at 508. Securing the gun would influence the actions of people entering the apartment. Indeed, reaching for the gun is more threatening than merely referring to it. We can be confident that an act of reaching for the gun provides a generally reliable manifestation of defendant's intent to use the gun in much the same way that "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire" a gun provides such a similarly accurate manifestation of intent to use. For these reasons, we hold that a defendant who reaches for a gun, whether the gun is visible or hidden, uses that gun for purposes of 18 U.S.C. § 924(c).

■ Having concluded that reaching for a hidden gun is a sufficiently active employment to constitute use, we must examine the jury instructions to determine the theory under which the defendant was convicted. The District Court instructed the jury as follows:

> the word "carries" does not require that the Government prove actual possession, nor does the word "use" require the Government to prove that the Defendants fired or displayed the firearm. Rather, it is sufficient to convict the Defendants if you find beyond a reasonable doubt that Defendants had possession of a firearm or that they had a firearm under their control and the firearm was possessed or controlled in any manner to facilitate the drug trafficking crime. Thus, if you find beyond a reasonable doubt that the Defendants

had the weapons ... readily accessible or [sic] possible use to secure, enforce, or protect the drugs, the money to purchase the drugs, the drug transaction, or the participants in the drug transaction, you can find them guilty [under § 924(c) ].

These instructions allowed the jury to convict Anderson of a § 924(c) violation under a facilitation or fortress theory rejected in *Bailey*.

Since defendant did not object to the jury instructions on this count, we review for plain error. Fed.R.Crim.P. 52(b). Defendant's failure to object to the jury instructions was understandable given this Circuit's pre-*Bailey* approval of the facilitation or fortress theory of use. The error seriously affected the fairness of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 728–32, 113 S.Ct. 1770, 1775–76, 123 L.Ed.2d 508 (1993). As we cannot be certain that the jury necessarily based its decision on defendant's actions in reaching for the gun, rather than convicting merely because possession of the gun facilitated defendant's drug trafficking, we must vacate the conviction under § 924(c).[4] *See United States v. Moore*, 76 F.3d 111, 112 (6th Cir.1996).

## IV

For these reasons, we **AFFIRM** defendant's conviction and those parts of his sentence challenged here. We **VACATE** defendant's conviction under 18 U.S.C. § 924(c) and **REMAND** for a new trial or resentencing.

---

4. We note that there was no evidence in the record to support a conviction under the carry prong of § 924(c).