**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Travis Jermaine COLE, also known as Travis Mayo, Defendant–Appellant.**

**No. 01–6107.**

United States Court of Appeals, Sixth Circuit.

Feb. 26, 2003.

Before MARTIN, Chief Judge, MERRITT and LAY,* Circuit Judges.

MERRITT, Circuit Judge.

In this criminal case, the defendant appeals his conviction following a jury trial, asserting that there was insufficient evidence to convict him of the conspiracy

* The Honorable Donald P. Lay. Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

count and that the district court erred by denying his motion to suppress a statement that he made to the police following his arrest. Although the defendant presents us with a close question, we find that a rational juror could have concluded that the government presented additional evidence, beyond the mere purchase or sale, from which the defendant's participation in the drug conspiracy could be inferred. We further conclude that the district court correctly found that the defendant's statement to police was ambiguous and that the statement was properly placed before the jury because the defendant was Mirandized and had signed a rights waiver. Finding no merit to the defendant's claims on appeal, we affirm his convictions and sentence.

## I. Facts

At trial, the evidence against the defendant, Travis Jermaine Cole, included the testimony of Demetrius Blakemore, a confidential informant who participated in two controlled crack cocaine purchases from Cole. Blakemore testified that on December 14, 1999, he met with agents of the Tennessee Bureau of Investigation, the Jackson (Tennessee) Police Department, and the Drug Enforcement Administration to arrange the first purchase. Blakemore was equipped with a wireless transmitter and given $850.00. Blakemore made a recorded telephone call to Cole in which Cole advised Blakemore that he had the ounce of crack cocaine that Blakemore wanted and told Blakemore to meet him at Cole's apartment. Blakemore then traveled to Cole's apartment, where Blakemore gave Cole $750.00 in exchange for 24 grams of crack cocaine. Afterward, Blakemore went to a prearranged meeting place and gave the crack cocaine to the Jackson Police Department. A Drug Enforcement Administration agent who monitored the surveillance equipment corroborated Blakemore's testimony. A forensic chemist from the Tennessee Bureau of Investigation testified that the actual amount of crack cocaine involved was 22.8 grams.

On January 7, 2000, Blakemore again met with the agents to arrange another transaction with Cole. Blakemore again was given a wireless transmitter and provided with $1,125.00. Blakemore contacted Cole on Cole's cellular telephone, and, after several conversations, Cole told Blakemore to meet him at his apartment. Blakemore then paid $1,050.00 for 34.3 grams of cocaine base. As with the earlier transaction, the officers monitored Blakemore's movements and recorded the transaction.

The government also introduced testimony from Blakemore and Jamaica Rodgers about several transactions between Rodgers and Cole. The defendant objected to the testimony about these buys, and the government argued that Rodgers and Cole were co-conspirators. The district court conditionally admitted Rodgers's testimony subject to the government making a prima facie case of a conspiracy. Blakemore testified about conversations that he overheard in which Rodgers discussed various amounts of drugs with the defendant. Rodgers testified that he pled guilty to a drug conspiracy involving distribution of over fifty grams of cocaine base under an agreement with the government whereby the government would move to reduce his sentence in exchange for truthful information and testimony regarding the conspiracy.

Rodgers further testified that beginning in October 1999 he would buy "like two ounces" from the defendant "every other day through the month of October." This arrangement continued until the end of November or the beginning of December when he started buying an eighth of a kilogram of cocaine. Around Christmas Eve of 1999, Rodgers started buying about

a quarter of a kilogram of cocaine a week. This arrangement continued until the first or second week of January, at which point the defendant was unable to obtain crack cocaine for sale and Rodgers began to buy from another dealer.

Rodgers also testified that the defendant told him that he was supplying other people with cocaine. Furthermore, there was testimony about a very high number of telephone calls made between Rodgers and Cole. The calls, totaling more than two hundred during January and February 2000, were made using several different telephone numbers and pagers.

On November 20, 2000, Cole was charged in a superseding indictment with distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. Cole pled not guilty, and a trial commenced on May 21, 2001. On May 23, 2001, the jury returned its verdict of guilty on all counts of the superseding indictment. The defendant was sentenced to 324 months imprisonment followed by four years of supervised release.

## II. Motion to Suppress

■ Prior to the trial, Cole filed a motion to suppress testimony regarding a statement he made to the police. The district court conducted an evidentiary hearing on the motion on May 21, 2001, just prior to the trial. During the suppression hearing, Officer Leslee Hallenback of the Jackson Police Department testified that she read Cole his Miranda rights and he signed a rights waiver form. Special Agent Cathy Dent was also present when Cole signed the waiver form.

After the questioning began, the defendant remained quiet and was concerned about his potential life sentence. Officer Hallenback explained that if the defendant decided to cooperate, then perhaps the government would move for a downward departure for substantial assistance. In response, Cole said, "Tell me a young black man going to sit here and tell you how he's selling dope? I can't do it." The defendant did not want to give a formal statement, and Officer Hallenback wrote down the above statement because, in her opinion, the statement was an admission. On cross-examination, Officer Hallenback testified that she thought he meant that "he can't sit there and tell us about all of the dope he had been selling."

Defense counsel argued to the Court that the defendant's statement was not a confession but rather the invocation of his right to remain silent. The Court concluded that the statement was ambiguous as to whether it was a confession and a "statement against interest." The Court denied the motion "because there clearly was a rights waiver signed and *Miranda* warnings were given. Whether the jury believes it's a confession or not will be up to the jury."

This Court reviews district court factual findings with respect to a motion to suppress for clear error and its conclusions of law de novo. *See United States v. Denton,* 246 F.3d 784, 787 (6th Cir.2001). Furthermore, the harmless error standard governs the erroneous admission of a confession. *See Arizona v. Fulminante,* 499 U.S. 279, 312, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

On appeal, Cole contends that the statement at issue demonstrates that he intended to invoke his Fifth Amendment right to remain silent. The defendant asserts that *Miranda* held that a defendant invokes his Fifth Amendment privilege when he indicates "in any manner" that he "wishes to remain silent." *Miranda v. Arizona,* 384 U.S. 436, 474–75, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Cole argues that once he exercised his right to remain silent after being

read his *Miranda* rights, his silence can not be used against him at trial. *See Gall v. Parker,* 231 F.3d 265, 311 (6th Cir.2000). Furthermore, the government violates a defendant's Fifth Amendment right to remain silent if it introduces evidence to show that the defendant would not respond to a specific question. *See United States v. Williams,* 665 F.2d 107, 109 (6th Cir.1981).

In response, the government argues that the district court correctly concluded that Cole's statement was ambiguous and that the statement was properly placed before the jury because the defendant was Mirandized and had signed a waiver. Alternatively, the government argues that even in cases where statements have been admitted into evidence in violation of *Miranda,* the error has been found to be harmless because they either were not incriminating or were cumulative of other independent evidence. *See United States v. Mahar,* 801 F.2d 1477 (6th Cir.1986). The government submits that it produced overwhelming evidence at trial and that, even if the lower court erred in admitting the statement, the error was harmless.

We agree with the district court that Cole's statement was ambiguous and it was properly admissible for the jury to draw its own inferences. The district court correctly found that Cole was read his *Miranda* rights and signed a rights waiver form, and Cole does not dispute that he made the statement.

### III. Conspiracy to possess with intent to distribute

■ Next, the defendant challenges the sufficiency of the evidence introduced to gain his conviction on the charge of conspiracy with intent to distribute a controlled substance, 21 U.S.C. § 846. When there is an attack on the sufficiency of the evidence to support a criminal conviction, the evidence must be viewed in the light most favorable to the government, and the appellate court must determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *See United States v. Blakeney,* 942 F.2d 1001, 1010 (6th Cir.1991).

Cole contends that the evidence in this case cannot support a conviction based upon his participation with Rodgers in a conspiracy. He argues that Rodgers testified that Cole was only one of the suppliers he used for his business and that Rodgers likewise used other people as suppliers for his drug operation. The government counters that the evidence in the case shows that there was an implied agreement between Rodgers and Cole.

To establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *See United States v. Layne,* 192 F.3d 556, 567 (6th Cir.1999). Circumstantial evidence alone is sufficient to prove the conspiracy's existence, and a formal agreement is unnecessary. *See United States v. Lloyd,* 10 F.3d 1197, 1210 (6th Cir.1993). Rather, a tacit agreement is adequate. *See id.* "One can assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell." *United States v. Bourjaily,* 781 F.2d 539, 544 (6th Cir.1986).

Generally, a buyer-seller relationship alone is insufficient to tie a buyer to a conspiracy because "mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy." *See, e.g., United States v. Anderson,* 89 F.3d 1306, 1310 (6th Cir.1996) (quoting *United States v. Grunsfeld,* 558 F.2d 1231, 1235 (6th Cir.1977)). Nonetheless, this court has often upheld conspiracy convic-

tions where there was additional evidence, beyond the mere purchase or sale, from which knowledge of the conspiracy could be inferred.

In *Grunsfeld*, the court ruled that evidence of credit sales and purchases of a large volume of drugs creates an inference of an on-going relationship with the conspiracy. 558 F.2d at 1235. In addition, advance planning and multiple transactions involving large quantities of illegal drugs may furnish evidence of involvement in a conspiracy and show that the defendant's involvement was not confined to a buyer-seller relationship. *See United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir.1996).

In *Bourjaily*, the Court stated that a large quantity of drugs, one kilogram of cocaine in that case, may raise the inference of a conspiracy. 781 F.2d 539, 544 (6th Cir.1986). Furthermore, this court found that repeat purchases, purchases of a large volume, or some other enduring arrangement, were sufficient for a conspiracy conviction. *See Anderson*, 89 F.3d 1306, 1311 (6th Cir.1996).

Cole directs the Court's attention to a Seventh Circuit case that appears to circumscribe liability for conspiracy in the context of a buyer-seller relationship. In *United States v. Rivera*, the Seventh Circuit compiled the following list of factors that the court had previously examined to determine whether a drug conspiracy exists: (1) length of the relationship, (2) established method of payment (for example, fronting), (3) the extent to which the transactions were standardized, and (4) the level of mutual trust between the buyer and the seller. 273 F.3d 751, 755 (7th Cir.2001). While none of the factors is dispositive, "if enough of the factors are present and point to a concrete, interlocking interest beyond individual buy-sell transactions," the court should not disturb the factfinder's inference that at some point the buy-

er-seller relationship developed into a co-operative venture. *Id.*

We agree that certain aspects of the evidence before the Court suggest that the dealing between Rodgers and Cole were arm's length transactions representative of a typical buyer-seller relationship. For example, there was no proof of a credit arrangement or a volume discount. Most importantly, Rodgers testified that Cole sold to other buyers, and Rodgers bought from other sellers.

On the other hand, the large amount of cocaine, the large number of telephone calls between Rodgers and Cole, and the seemingly standardized transactions weigh in favor of finding a conspiracy. As a result, even if we were to adopt the *Rivera* factors, it appears that a rational juror could have concluded that Cole conspired with Rodgers to distribute the cocaine. While these facts present us with a close question, we are mindful that we must view the evidence in the light most favorable to the government. As a result, we will not disturb the jury's verdict.

## IV. Drug Quantity Challenge

Cole's final assertion of error challenges the quantity of drugs used by the district court during his sentencing. The court based its quantity finding upon § 1B1.3(a)(1)(B) of the Sentencing Guidelines, which requires the court to include as relevant conduct the amount of drugs reasonably foreseeable to the defendant in the scope of the conspiracy. *See United States v. Wilson*, 168 F.3d 916, 922 (6th Cir.1999). The defendant argues that because the government failed to establish the existence of the conspiracy, the amount of drugs calculated as relevant conduct (based upon the testimony of co-conspirator Jamaica Rodgers) is not correct.

Because we find that a rational trier of fact could have concluded that a conspiracy existed between Rodgers and Cole, we affirm Cole's sentence in this respect.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.