NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0426n.06
Filed: June 20, 2007

No. 06-3027

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ROBERT NELSON, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

**Before: SILER and GILMAN, Circuit Judges; and ZATKOFF, District Judge**[*]

**LAWRENCE P. ZATKOFF, District Judge.** On April 7, 2005, Robert Nelson was

charged with conspiracy to distribute and possess with intent to distribute a controlled substance, and

with four counts of unlawful use of a communications facility. Before trial, Nelson filed a motion

to dismiss based on the Speedy Trial Act, 18 U.S.C. § 3161. The district court denied the motion.

On August 3, 2005, Nelson was convicted on all counts after a jury trial. The district court sentenced

Nelson to 96 months of imprisonment, and this appeal followed. Nelson argues that the district court

granted a continuance in violation of the Speedy Trial Act, there was insufficient evidence to support

his conviction, the district court erred in its determination of the amount of drugs attributed to him

for sentencing purposes, and the district court erred in failing to hold a hearing on Nelson's

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting
by designation.

complaints regarding his counsel. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On April 7, 2005, a federal grand jury for the Southern District of Ohio returned an indictment charging Nelson with conspiracy to distribute and possess with intent to distribute heroin, and with four counts of unlawful use of a communications facility. The government alleged that Nelson conspired with Fred Baah to distribute heroin brought by Baah into the United States from Ghana.

Nelson's trial was scheduled to begin on June 13, 2005. On June 3, 3005, the Assistant United States Attorney ("AUSA") was contacted by another AUSA, who had been contacted by the mother of Don Hayes, also known as Pooh Bear. Hayes, who was in state custody in New Orleans, had been heard on a wiretap of Baah's phone. In a prior conversation with the AUSA, Nelson's attorney stated that Nelson had been introduced to Baah by Pooh Bear for the purpose of renting an apartment.

According to Hayes's mother, he was willing to cooperate with the government. The AUSA considered Hayes to be an essential witness for Nelson's case because he could provide either corroborating evidence for the government or exculpatory evidence for Nelson. However, the U.S. Marshal's Service indicated that it would need a minimum of thirty days to transport Hayes from New Orleans to Ohio. Accordingly, the AUSA moved for a continuance of Nelson's trial.

The district court held a hearing on June 8, 2005. At the hearing, Nelson opposed the continuance. The district court held that:

(1) The Court is available to try this case on June 13, 2005, beginning at 9:00 a.m.

(2) Counsel for Government has set forth a need for a continuance because of a recently discovered out of state witness who is essential to their case or who may be able to provide exculpatory evidence to the Defendant.

(3) The location of the essential witness was recently learned by the Government on June 3, 2005. The witness is incarcerated outside of the jurisdiction of this Court. The Government has with all due diligence attempted to contact this witness and authorities to arrange for the transportation of the witness to this Court but additional time is needed. 18 U.S.C. 1361(h)(3)(A).

(4) A minimum of an additional forty-five to fifty days is needed to arrange with out-of-state authorities for release of the witness for the purpose of testifying at trial, to coordinate the transportation of the witness by the U.S. Marshal's Office, to have counsel appointed to consult with the witness, and interview the witness prior to trial.

(5) The Court finds that a continuance until August 1, 2005 is reasonable and that the continuance is being granted before the expiration of the speedy trial time limit.

(6) The failure to grant the requested continuance would likely result in a miscarriage of justice in this cause. 18 U.S.C. § 3161(h)(8)(B)(I).

(7) A continuance until August 1, 2005, would not impair defendant's interest in a speedy trial.

(8) The delay occasioned by the continuance is properly excluded from the time limits of the Speedy Trial Act.

JA at 73-74. After the continuance was granted, Hayes refused to waive his Fifth Amendment privilege and cooperate with the government.

Nelson's trial began on August 1, 2005. The primary witness against Nelson was Fred Baah. Baah testified that he came to the United States from Ghana in 1998. He first lived in New York City and then moved to Columbus, Ohio. In 2003 he began bringing heroin into the United States from Ghana in order to pay off a debt. One of the persons he used to distribute heroin was known

as Pooh Bear (Hayes). Pooh Bear told Baah that they could bring heroin to a man named Bob, and he would buy it. JA at 201. Pooh Bear called Bob to make arrangements, and he and Baah went to meet Bob. At the meeting, Baah sold Bob 800 grams of heroin. At trial, Baah identified Nelson as Bob. JA at 202. Over the course of around a year, Baah sold Nelson (Bob) heroin on three more occasions. The second sale was for 500 grams, the third for 300 grams, and the fourth for 500 grams. JA at 203-05. For the third sale, Baah provided Nelson the 300 grams of heroin on credit, telling him, "When you finish, you can call me and I'll pick up my money." JA at 204. Baah told Nelson that the heroin came from Africa. Baah also referred to Nelson as the "old man", because of his age. JA at 220. Baah also testified regarding intercepted calls with Nelson regarding the sale of heroin. One of the calls occurred on October 2, 2004. Baah testified that the call was to arrange a sale of heroin, and that he delivered 500 grams to Nelson the next day. JA at 250-52.

Jan Mitpa also testified. Mitpa lived in Baltimore, Maryland, and aided Baah in the distribution of heroin. Mitpa's wife smuggled heroin into the United States from Ghana. JA at 379. On one occasion, Baah told Mitpa to bring him 500 grams of heroin so that he could give it to the "old man". JA at 386-87. Mitpa and two other men, Yaw and George, drove from Baltimore to Columbus in a rented car. Baah and Yaw delivered the heroin to the "old man". JA at 392. Yaw told Mitpa that he was scared because he had spotted a car following him and Baah when they delivered the heroin to the "old man". JA at 392.

Drug Enforcement Agent Bevins also testified. Bevins testified that he worked undercover to purchase heroin. Bevins testified that purchases of 14 or 28 grams would be for distribution, and

purchases of a tenth of a gram would be for personal use. On October 3, 2004, Agent Bevins conducted surveillance of Yaw and Baah. Yaw and Baah drove to Nelson's house, and Baah went into the house carrying a white grocery-type sack. After about nine or ten minutes Baah left the house and returned to the car. Baah was still carrying the sack, which appeared fuller than when he entered the house. JA at 337-38. Other agents involved in the surveillance also testified.

The jury returned a verdict on August 3, 2005, finding Nelson guilty of conspiracy to distribute and possess with intent to distribute a controlled substance, and four counts of unlawful use of a communications facility. The jury found Nelson responsible for over 100 grams of heroin.

Nelson was sentenced on December 16, 2005. At the sentencing hearing, Nelson expressed dissatisfaction with his trial counsel. The district court sentenced Nelson to 96 months imprisonment.

## II.  ANALYSIS

### A.  Speedy Trial Act

The defendant bears the burden of proving a violation of the Speedy Trial Act.  *United States v. Cope*, 312 F.3d 757, 777 (6th Cir. 2002). This Court has used conflicting standards of review for claims involving the Speedy Trial Act – *de novo* and abuse of discretion. *Id.* at 776. One explanation given for the conflict is that the *de novo* standard is applied to interpretations of the Act, and the abuse of discretion standard is applied to factual findings concerning the Act. *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994) (citing *United States v. Ortega-Mena*, 949 F.2d 156, 158 (5th Cir. 1991). In the instant case, Nelson's claim fails under either standard.

Nelson was indicted on April 7, 2005, arrested on April 12, 2005, and his trial began on August 1, 2005. Nelson argues that the continuance granted by the district court did not constitute excludable delay under the Speedy Trial Act, and thus his trial did not commence within the Act's 70-day limit. The government raises two arguments in response: Nelson's discovery motion tolled the Speedy Trial Clock, and the continuance granted by the trial court constituted excludable delay.

### 1. Nelson's Discovery Motion

In *United States v. Mentz*, 840 F.2d 315 (6th Cir. 1988), this Court held that the defendant's motion for discovery pursuant to Federal Rule of Criminal Procedure 16 did not toll the Speedy Trial Clock. The Court held that "the district court, consistent with the thrust of Rule 16, viewed [the defendant's] motion as merely a pro forma request for discovery directed at the government, rather than an invitation for district court intervention." *Id.* at 329. Thus, the motion did not toll the Speedy Trial Clock.

In contrast, in *United States v. Chalkias*, 971 F.2d 1206 (6th Cir. 1992), this Court held that the defendant's motions for discovery did toll the Speedy Trial Clock. The Court noted that the defendant's motions elicited a response from the government and a ruling from the district court, which treated the discovery motions "as full-fledged motions that required disposition well in advance of the trial date." *Id.* at 1210.

Nelson's motion in the instant case falls somewhere in between the ones in *Mentz* and *Chalkias*. Nelson's motion was entitled "Motion for discovery and disclosure pursuant to Rule 16 of the Federal Rules of Criminal Procedure." JA at 13. Nelson's motion was resolved between the

parties without the intervention of the district court. Thus, Nelson's motion could be interpreted as a pro forma request for discovery directed at the government. On the other hand, the government did file a response to the motion, indicating that at one time the government viewed the matter as requiring judicial intervention.

The Court need not decide this issue. Because the Court finds that the district court properly granted a continuance constituting excludable delay, the 70-day limit did not expire, regardless of whether the Speedy Trial Clock was tolled for Nelson's discovery motion.

2.      *The Continuance*

The Speedy Trial Act states that excludable delay includes "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness." 18 U.S.C. § 3161(h)(3)(A). An essential witness is unavailable "whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. § 3161(h)(3)(B). Excludable delay also includes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A). The Act further states that:

> No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8).

In the instant case, the district court granted a 49-day continuance, on the government's motion, to obtain the testimony of Hayes (Pooh Bear). Before trial, Nelson filed a motion to dismiss based on the Speedy Trial Act, arguing that the 49-day continuance did not constitute excludable delay. Nelson argues on appeal that the district court erred in denying his motion to dismiss.

Nelson claims that Hayes was not unavailable because the government knew where he was, and the length of the continuance was unreasonable. This argument is without merit. The government became aware of Hayes's potential cooperation on June 3, 2005, through Hayes's mother. Nelson's trial was scheduled to begin on June 13, 2005. Hayes was unavailable for purposes of Nelson's trial because he was in state custody in New Orleans. The district court found that:

> A minimum of an additional forty-five to fifty days is needed to arrange with out-of-state authorities for release of the witness for the purpose of testifying at trial, to coordinate the transportation of the witness by the U.S. Marshal's Office, to have counsel appointed to consult with the witness, and interview the witness prior to trial.

JA at 74. Nelson has failed to produce any evidence challenging these findings.

Nelson also argues that Hayes was not an essential witness. Nelson notes that the government did not call Hayes as a witness, and that even if Hayes had testified on behalf of the government, he would only have corroborated testimony given by Baah. Nelson argues that a witness providing merely corroborative testimony cannot be regarded an essential witness.

The Court need not reach the issue of whether Hayes was an essential witness for purposes of the Speedy Trial Act, because 18 U.S.C. § 3161(h)(8) provides an alternate ground for a period

of excludable delay. According to § 3161(h)(8)(A), the district court can grant a continuance constituting excludable delay by finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). In the instant case, the district court specifically made that finding. JA at 73. The district court further found that "the failure to grant the requested continuance would likely result in a miscarriage of justice," and a "continuance until August 1, 2005 would not impair defendant's interest in a speedy trial." JA at 74. Hayes's subsequent failure to testify does not render this finding erroneous. At the time of its ruling, the district court had the following information: Hayes's mother indicated he was willing to cooperate, and he would provide either important corroborating evidence for the government's case or evidence exculpating Nelson. Based on this information, the district court did not err in ruling that the ends of justice would be served by the continuance, and that it constituted excludable delay.

## B. Sufficiency of the Evidence

The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Woods*, 877 F.2d 477, 479 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Nelson argues that the evidence presented at trial showed only that he was an occasional purchaser of heroin from Baah, and that a buyer/seller relationship alone is insufficient to sustain a conspiracy conviction. Nelson further notes that in Baah's initial interviews with the government

he did not mention all the sales that he testified about at trial. Nelson also argues that there was no evidence showing his intent to distribute.

While it is true that a buyer/seller relationship alone is insufficient to sustain a conspiracy conviction, "only 'slight' evidence is needed to connect a defendant to a conspiracy." *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004). "The government need not show a formal, written agreement among the co-conspirators." *United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996). Circumstantial evidence can establish the defendant's participation in a conspiracy. *Id.* The purchase of a significant amount of narcotics can indicate participation in a conspiracy. *Id.* at 1311. Furthermore, the possession of large quantities of narcotics can imply the intent to distribute. *United States v. Faymore*, 736 F.2d 328, 333 (6th Cir. 1984). The purchase of drugs on credit can also indicate participation in a conspiracy. *Henley*, 360 F.3d at 514. The uncorroborated testimony of an accomplice is sufficient to support a conviction. *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

In the instant case, Baah testified that Pooh Bear arranged for him to meet Nelson to sell heroin. At the meeting between Pooh Bear, Baah, and Nelson, Baah sold Nelson 800 grams of heroin. Baah sold Nelson heroin on three other occasions, in the amounts of 500 grams, 300 grams, and 500 grams. Nelson knew the heroin came from Africa. The last sale was corroborated by phone records and the testimony of Drug Enforcement Agents and Jan Mitpa. Nelson's challenge regarding Baah's initial interviews with the government is unpersuasive. This information was presented to the jury, and they were able to weigh the evidence and determine Baah's credibility. Determining

the credibility of a witness is the province of the jury, not the appellate court. *United States v. Caraway*, 411 F.3d 679, 682 (6th Cir. 2005).

Agent Bivens testified that purchases of 14 or 28 grams of heroin would not be for personal use, but for further distribution. Thus, the amount of heroin Baah sold to Nelson is highly significant, and suggests that he participated in the conspiracy with an intent to distribute. Baah also testified that he provided Nelson heroin on credit on one occasion, telling him "When you finish you can call me and I'll pick up my money." JA at 204. This also suggests that Nelson participated in the conspiracy.

Viewed in the light most favorable to the prosecution, this evidence indicated that Nelson knew of the conspiracy to distribute heroin, and participated in it. Thus, the evidence was sufficient to support Nelson's conviction.

## C. Amount of Heroin

The jury found Nelson responsible for at least 100 grams of heroin. The district court found that Nelson was responsible for 2100 grams of heroin for sentencing purposes. Nelson raises two challenges to this finding. First, Nelson argues that the district court violated *United States v. Booker*, 543 U.S. 220 (2005), by using facts not found by the jury to establish his guideline range. Second, Nelson argues there was insufficient evidence to support his responsibility for 2100 grams of heroin.

*Booker* does not blanketly prohibit judges from finding the facts themselves in determining a sentence. *Booker* specifically stated that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the

facts that the judge deems relevant." *Booker*, 543 U.S. at 233 (Stevens, J.). Rather, *Booker* held that "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244 (Stevens, J.).

21 U.S.C. § 841(b)(1)(B) provides that a person responsible for 100 grams or more of heroin "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." The jury found Nelson responsible for 100 grams or more of heroin, and he was sentenced to 96 months, within the statutory range. Thus, there was no *Booker* violation. *See United States v. McCaskill*, 202 Fed. Appx. 70, 2006 U.S. App. LEXIS 26639, *31 (6th Cir. 2006) ("These judicially-found facts did not result in a sentence that was beyond the statutory maximum; they did not result in a sentence violative of [the defendant's] Sixth Amendment rights.").

In the post-*Booker* era, guideline ranges are still calculated by utilizing a preponderance-of-the-evidence standard. *United States v. Rodriguez-Ruiz*, Nos. 04-1697/04-1754 , 2005 U.S. App. LEXIS 27874, *14 (6th Cir. 2005). Factual findings impacting the guideline range are reviewed under the clearly erroneous standard. *Id.* at *11-12. In the instant case, the district court determined that Nelson was responsible for 2100 grams of heroin based on the testimony of Baah. Nelson points to Baah's initial interviews with the government, where he did not mention all the transactions with Nelson that he testified to at trial. However, as noted above, this information was presented at trial, and the district court had an opportunity to determine Baah's credibility. Thus, the district court's determination of the amount of drugs utilized for sentencing purposes was not clearly erroneous.

**D. Nelson's Complaints regarding his Counsel**

Nelson claims that the district court should have held a hearing on his allegations regarding his attorney, and should have appointed a new attorney. During his sentencing hearing, Nelson made statements to the court reflecting his dissatisfaction with the trial, the prosecuting attorney, and his own attorney. Nelson's statements regarding his attorney included the following: "And obviously, it was nothing, because he didn't go - he didn't do anything. . . . He come here. He sat down beside me, as he's doing now, and did nothing." JA at 133. "So how am I going to help myself? Nobody else is helping me. So I'm trying to do what I can." JA at 134. "Then Jonathan didn't find out what he was - what statement he was going to make. He didn't do one thing." JA at 135.

After Nelson finished speaking, his attorney addressed the court. He stated that Nelson had been a cooperative client, but had "good days and bad days" as a result of a recent stroke. JA at 140. He also stated that Nelson had been frustrated by the different procedural rules that apply in state and federal court. Nelson made no further statements to the court.

The denial of a defendant's motion to substitute counsel is reviewed for abuse of discretion. *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006). Factors relevant to this determination are:

> (1) the timeliness of the motion,
>
> (2) the adequacy of the court's inquiry into the matter,
>
> (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and
>
> (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Id.* (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)).

In the instant case, Nelson never unequivocally asked the district court to appoint a new attorney; he merely expressed dissatisfaction with his attorney's performance. Furthermore, Nelson's complaints were not timely; he expressed them for the first time at his sentencing hearing. The district court made an adequate inquiry into the matter; Nelson was allowed to make statements spanning nine pages in the transcript. Nelson's attorney explained that there was neither a conflict nor a lack of communication between them, and that Nelson's frustration was due to his stroke and the difference in procedural rules between state and federal court. Nelson did not object to this characterization of his statements. The district court stated that Nelson's attorney conducted himself professionally and "represented [Nelson] in a more than stellar manner during this whole trial." JA at 138. Under these facts, the district court did not abuse its discretion in failing to appoint new counsel for Nelson, or in not holding further hearings on the matter.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.